**Reversed and Remanded and Plurality, Concurring, and Dissenting Opinions filed January 24, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-01074-CV

---

## KEN HOAGLAND, Appellant

## V.

## BILL BUTCHER, KARI BUTCHER, BUTCHER & BUTCHER, AND OCTV PARTNERS, LLC, Appellees

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2010-58144**

---

## P L U R A L I T Y   O P I N I O N

In two issues, appellant Ken Hoagland challenges the trial court's order granting appellees' special appearance and dismissing the underlying case. We hold Hoagland pleaded jurisdictional facts that appellees committed tortious acts in Texas and appellees did not present evidence negating every basis for jurisdiction. We thus reverse the trial court's order and remand this case for further proceedings

consistent with this opinion.

## *Background*

Hoagland is the chairman of a political effort called the FairTax Campaign. The purpose of the FairTax Campaign is to persuade the United States Congress to pass a bill replacing the current federal income and payroll tax structures with a consumption tax. Appellees Bill and Kari Butcher, both residents of California, are the general partners of appellee Butcher & Butcher, a general partnership with its principal place of business in California.

On July 7, 2009, Bill and Kari traveled to Houston, Texas and made a presentation on behalf of Butcher & Butcher to a non-profit organization called Americans for Fair Taxation (AFFT) during its board meeting in hopes of being hired by AFFT to promote the FairTax Campaign. Hoagland was present at the meeting. AFFT thereafter hired Butcher & Butcher.

Appellee OCTV Partners, LLC, a California limited liability company, subsequently was formed to produce "political direct response television commercials" promoting the FairTax Campaign and soliciting funds for AFFT. Hoagland was one of three initial managers of OCTV, and Bill was one of five members. Hoagland, in his capacity as a manager of OCTV, along with the other managers and members of OCTV (including Bill), entered into an Operating Agreement.[1] Pursuant to the Operating Agreement, Hoagland was entitled to yearly distributions of "Available Cash."[2]

---

[1] The record includes an unexecuted copy of the Operating Agreement. However, Hoagland's affidavit in support of his response to the special appearance states that the Operating Agreement was executed, and appellees do not dispute this fact. The record does not show when the Operating Agreement was executed, although it may have been during November 2009.

[2] "Available Cash" was defined as "the amount of cash available for distribution to the Members and Managers" to be distributed as follows: first, to the members until they had received distributions totaling twice their capital contributions; second, 60 percent to the

2

On January 6, 2010, OCTV entered into an agreement with AFFT. Pursuant to the OCTV-AFFT Agreement, OCTV agreed to produce infomercials soliciting contributions for the FairTax Campaign. The first infomercial would be financed by OCTV. Contributions would be sent to an escrow account in Houston, Texas. Escrow funds would be used to compensate OCTV for its services and to finance the infomercials. Hoagland wrote, helped develop and promote, and appeared in a 30-minute infomercial. Hoagland alleges that, after OCTV produced the infomercial, Bill convinced Hoagland to take a $3,000 monthly flat fee in lieu of receiving distributions of Available Cash under the Operating Agreement because the infomercial campaign might not be successful.

On May 19, 2010, Bill and Kari delivered a report at another AFFT board meeting in Hoagland's presence detailing the success of OCTV's infomercial.[3] At its July 29, 2010 board meeting, AFFT "had a discussion on the possible violations of the fundraising agreement by Butcher & Butcher." After the discussion, Bill and Kari joined the meeting to explain their "financial performance and contract violation issues." After Bill and Kari's presentation, the board determined that Bill and Kari, on behalf of Butcher & Butcher, breached the OCTV-AFFT Agreement by "engineer[ing] additional extra compensation." The board decided to terminate the OCTV-AFFT Agreement. Hoagland asserts appellees were fired by AFFT for "inappropriately draining . . . monies, revenues, and other dollars generated by the infomercial . . . for their own personal gain."[4] He also alleges he was not paid in

members and 40 percent to the managers until the members had received distributions totaling four times their capital contributions; and thereafter, 60 percent to the managers and 40 percent to the members.

[3] The report is not in our record, but it is discussed in Hoagland's affidavit in support of his response to appellees' special appearance.

[4] According to Hoagland, the dispute between AFFT and appellees is being resolved through arbitration.

accordance with the Operating Agreement or paid consulting fees that appellees owed him.

Hoagland sued appellees on September 13, 2010, asserting claims for breach of contract, quantum meruit, fraudulent inducement, and fraud, and seeking injunctive relief to prevent appellees "from wrongfully appropriating and using [Hoagland's] likeness, name, and proprietary data in connection with a series of infomercials and other social messaging medium [sic] such as You Tube [sic] and Twitter in connection with . . . the 'FairTax Campaign.'" Hoagland alleged the following jurisdictional facts:

> Each of the Defendants made written and oral misrepresentations of material fact to the Plaintiff (while Plaintiff was physically located in Harris County, Texas) via email and telephone conversations and in-person meetings during calendar years 2009 and 2010, with the intention that Plaintiff would rely upon such misrepresentations and take action or refrain from taking certain actions within Harris County, Texas. Furthermore, Defendants Bill Butcher and Kari Butcher made trips to Houston, Texas, as part of their effort to mislead Plaintiff, and attended meetings with Plaintiff during which fraudulent misrepresentations were made by each of the Defendants to the Plaintiff. Moreover, Defendants have sent money to Plaintiff in accordance with an enforceable oral agreement during calendar years 2009 and 2010 for services performed by Plaintiff, but eventually Defendants breached their oral agreement with Plaintiff by wrongfully refusing to continue paying money to Plaintiff for services rendered in the past and to be rendered in the future. Recently, in 2010, Defendants wrongfully appropriated the name, likeness and proprietary data belonging to the Plaintiff and refuse to stop the unauthorized use of same. The wrongful appropriation includes the public display and use of data within the State of Texas on You Tube [sic] and other public social messaging sites such as Twitter.

The trial court granted a temporary restraining order restraining appellees from "using or displaying or referencing Plaintiff's name, image, likeness, voice, photos, videos, scripts, data, or any other type of image or likeness of property of Plaintiff,

4

on You Tube [sic], Twitter, or any other form of social networking medium."

Appellees filed a special appearance alleging that OCTV had no contacts with Texas and Bill's, Kari's, and Butcher & Butcher's contacts with Texas were not related to the business transactions at issue in the lawsuit. The trial court granted the special appearance and dismissed the underlying case for want of jurisdiction. The trial court did not issue findings of fact or conclusions of law. Hoagland filed a motion for new trial, which the trial court denied.

### *Discussion*

Hoagland challenges the trial court's grant of the special appearance, dismissal of the underlying case, and denial of Hoagland's motion for new trial. Whether a court has personal jurisdiction over a nonresident defendant is a question of law.[5] *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002); *Meader v. IRA Res., Inc.*, 178 S.W.3d 338, 342 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The trial court's decision to grant or deny a special appearance is subject to de novo review on appeal, but if a factual dispute exists, an appellate court is called upon to review the trial court's resolution of the factual dispute as well. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Coleman*, 83 S.W.3d at 806; *Meader*, 178 S.W.3d at 342–43. If the trial court does not issue findings of fact, as in this case, a reviewing court should presume the trial court resolved all factual disputes in favor of its judgment. *Coleman*, 83 S.W.3d at 806; *Meader*, 178 S.W.3d at 343. Personal jurisdiction over nonresident defendants satisfies the constitutional requirements of due process when the defendant has purposefully established minimum contacts

---

[5] We do not adjudicate the merits of the parties' claims when conducting an analysis of personal jurisdiction. *Bougie v. Technical Risks, Inc.*, No. 14-03-01222-CV, 2004 WL 2902508, at *5 (Tex. App.—Houston [14th Dist.] Dec. 16, 2004, no pet.) (mem. op.). Rather, we review the claims and the evidence regarding only the jurisdictional facts. *Id.*

5

with the forum state and the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *Marchand*, 83 S.W.3d at 795; *Meader*, 178 S.W.3d at 343.

## I. Hoagland's Burden to Plead Sufficient Jurisdictional Facts

Appellees argue that Hoagland did not meet his initial burden of "alleg[ing] specific facts that rise to the level of general jurisdiction or specific jurisdiction." A plaintiff bears the initial burden of alleging facts sufficient to bring a non-resident defendant within the terms of the Texas long-arm statute (i.e., for a tort claim, the plaintiff must allege that the defendant committed tortious acts in Texas). *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658-59 (Tex. 2010); *Coleman*, 83 S.W.3d at 807. The nonresident defendant then assumes the burden of negating all bases of jurisdiction in the plaintiff's allegations. *Kelly*, 301 S.W.3d at 658; *Coleman*, 83 S.W.3d at 807. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading."[6] *Kelly*, 301 S.W.3d at 658.

The Texas long-arm statute extends jurisdiction over a nonresident who "commits a tort in whole or in part in [Texas]." Tex. Civ. Prac. & Rem. Code § 17.042(2)[7]; *see also Kelly*, 301 S.W.3d at 659. Fraud and fraudulent inducement

---

[6] "If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute . . . , the defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 658-59. When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleading to include the necessary factual allegations, allowing jurisdiction to be based on evidence rather than allegations. *Id*. at 659.

[7] The other two prongs of the long-arm statute, applicable to a nonresident who "contracts . . . with a Texas resident and either party is to perform the contract in whole or in part in this state" or who "recruits Texas residents . . . for employment inside or outside this state," may also apply because Hoagland alleges he is a Texas resident who entered into a contract with appellees after they induced him in Texas to do so and that appellees "hired him to continue to act as Chairman [of the FairTax Campaign], write virtually everything related to the

require (1) a material misrepresentation by a speaker who knew at the time it was false or made it recklessly as a positive assertion without any knowledge of the truth with the intent that the other party rely on the misrepresentation, (2) reliance by the other party on the misrepresentation, and (3) resulting injury of the other party. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Fraud and fraudulent inducement are separate causes of action that share the same elements. *See id.*; *see also Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

Hoagland alleged in his live petition, in relevant part, that each appellee "made written and oral misrepresentations of material fact to [Hoagland] . . . in Harris County, Texas . . . via email and telephone conversations and *in-person meetings* . . . with the intention that [Hoagland] would rely upon such misrepresentations and take action or refrain from taking certain actions within Harris County, Texas." (Emphasis added.) Hoagland also alleged that appellees each (1) "misrepresented their abilities and financial condition such that it was believed they would bring enormous skill, expertise, and personal and donated monies to the [FairTax Campaign] effort" and (2) fraudulently induced Hoagland into signing the Operating Agreement. Hoagland further alleged that Bill convinced Hoagland to take a $3,000 monthly fee in lieu of the fee to which he was entitled under the Operating Agreement based on Bill's representation that Hoagland would benefit more financially from taking the monthly fee than from

---

campaign . . . as well as to appear on local and national media outlets and lead rallies and such." *See* Tex. Civ. Prac. & Rem. Code § 17.042(1), (3). However, Hoagland was required only to allege facts bringing one of his claims within the terms of the statute. *See Horizon Shipbuilding v. BLyn II Holding, LLC*, 324 S.W.3d 840, 847 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding plaintiff's allegation that defendants committed torts in Houston, Texas was sufficient to bring defendants under the long-arm statute for plaintiff's claims of various forms of fraud and negligent misrepresentation).

taking the fee outlined in the Operating Agreement.[8]

We conclude Hoagland pleaded jurisdictional facts that appellees committed tortious acts—fraud and fraudulent inducement—in Texas. *See Kelly*, 301 S.W.3d at 659-60 (holding plaintiff was required to allege defendants committed fraudulent acts in Texas to satisfy his initial burden of pleading jurisdictional facts); *see also Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 847 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding plaintiff's allegation that defendants committed torts in Texas was sufficient to bring defendants under the long-arm statute). Accordingly, Hoagland pleaded allegations sufficient to bring appellees within the terms of the Texas long-arm statute, and the burden shifted to appellees to negate every basis for jurisdiction alleged by Hoagland. *See Horizon Shipbuilding, Inc.*, 324 S.W.3d at 847.

## II.    Appellees' Burden to Negate Every Basis for Jurisdiction

Hoagland argues the trial court erred in granting appellees' special appearance because appellees did not negate every ground for personal jurisdiction. We agree. A nonresident defendant may negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659. Factually, the defendant may present evidence that it has insufficient contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* Legally, the defendant may show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id.*

---

[8] Hoagland alleged "Bill called [Hoagland] and asked him to take [the] $3,000 per month flat fee." Specific jurisdiction is not necessarily established by evidence that a nonresident defendant made misrepresentations in a single telephone call to a Texas resident. *Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 282 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791–92 (Tex. 2005)). But fraudulent misrepresentations made over a series of contacts to induce a party to enter a transaction can support personal jurisdiction. *Id.*

The contacts on which Hoagland relies in relevant part to support his argument that the trial court could exercise jurisdiction over his claims are three AFFT board meetings that Bill and Kari Butcher attended in Texas and Bill's telephone call urging Hoagland to accept a reduced fee under the Operating Agreement.[9] Hoagland averred that appellees made presentations during the board meetings regarding, respectively, "their qualifications and past performance," "FairTax," and "their performance under the 'OCTV Partners, LLC Media Content Production and Financial Agreement'"; appellees "made written and oral misrepresentations of material fact" to Hoagland at the meetings; and, during the phone call, Bill misrepresented to Hoagland how successful the infomercial would be to induce Hoagland to accept a reduced fee. Appellees' special appearance was supported by affidavits executed by Bill, Kari, and the president of OCTV, Marc Kassoff. Appellees admit Bill and Kari attended the meetings but deny that Butcher & Butcher or Kari "made any representations *to [Hoagland]*, in Texas, regarding the business transaction made the basis of the captioned case."[10] (Emphasis added.) Bill did not deny making the phone call to Hoagland or otherwise address it. Kassoff stated "[a]ny communications with Plaintiff

[9] Hoagland also relies on the following contacts: (1) appellees "used . . . Hoagland to solicit funds for OCTV on a national basis, both outside and inside the State of Texas," OCTV appointed Hoagland to serve as its manager "with broad powers to bind OCTV to agreements made in Houston and elsewhere," and OCTV entered into an agreement for an escrow account to be set up in Houston; and (2) appellees made written and oral misrepresentations to Hoagland via email and telephone conversations while Hoagland was in Houston. Because we hold that appellees did not present evidence to negate jurisdiction based on torts they allegedly committed in Texas at the three board meetings and during a phone call, we need not address the significance of these other contacts. *See Horizon Shipbuilding, Inc.*, 324 S.W.3d at 848 (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009) ("[T]he minimum-contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number.")); *Id.* ("Even a single act can support jurisdiction so long as it is substantial.").

[10] It is unclear whether this statement challenges that the representations were made at all, were made in the presence of Hoagland, were misrepresentations, or had a substantial connection to the operative facts of the litigation.

9

regarding OCTV . . . that did not take place in California were conducted by telephone." Kassoff admitted that when Hoagland "entered into contract and commenced business activity with OCTV . . . , [Kassoff] was not a manager or officer of OCTV."[11]

---

[11] Hoagland responded with his own affidavit and the affidavit of Terry Stockholm, AFFT's acting secretary. Hoagland stated that (1) appellees "misrepresented their abilities and financial condition such that it was believed they would bring enormous skill, expertise, and personal and donated monies to the effort"; (2) these misrepresentations were made to Hoagland while he was in Texas; and (3) the misrepresentations induced Hoagland into signing the Operating Agreement. In support of this statement, Hoagland attached the AFFT board meeting minutes from the July 7, 2009 board meeting which state that Bill and Kari made a presentation to the board on behalf of Butcher & Butcher "regarding their qualifications and past performance." Hoagland was present at the meeting. Hoagland stated that appellees' misrepresentations at this meeting also induced AFFT to enter into the OCTV-AFFT agreement.

Hoagland further stated that Bill and Kari made another presentation to AFFT on May 19, 2010, with Hoagland and Stockholm in attendance. During that presentation, Bill and Kari provided a report "tout[ing] the achievements of FairTax TV." Stockholm stated the presentation was "regarding the work [Bill, Kari, and Butcher & Butcher] had done since being employed." Hoagland attached the report as an exhibit. Stockholm prepared the board meeting minutes, and they were attached as an exhibit.

Hoagland stated Bill and Kari made another presentation on July 29, 2010, "regarding their financial performance and certain concerns about contract violations" to the AFFT board. Hoagland did not state that he was present at this meeting; however, Stockholm was. Hoagland and Stockholm both stated that the board "determined that these [appellees] breached their agreement with AFFT, and that they had committed fraud and breach of contract by engineering additional extra compensation for which they were not entitled." Stockholm prepared the board meeting minutes, and they were attached as an exhibit.

Appellees thereafter filed a supplemental special appearance and reply complaining that Hoagland's and Stockholm's affidavits (1) failed to show "how [Hoagland and Stockholm] obtained personal knowledge"; (2) contained legal arguments and conclusions; (3) only raised fact issues but did not conclusively prove jurisdiction; (4) contained hearsay from inadmissible documents and from AFFT board meetings; (5) made misleading statements regarding exhibits to the affidavits; and (6) are conclusory. Appellees also argued that Hoagland "did not allege or offer any proof that the alleged [f]raud was committed by . . . OCTV," Hoagland only alleged misrepresentations by Butcher & Butcher to AFFT, and even if appellees committed fraud, a single act of fraud would not confer jurisdiction on the Texas court. Because we hold that appellees did not negate jurisdiction based on appellees' purportedly committing fraud in Texas, we do not address the evidence presented by Hoagland or appellees' objections to that evidence. *See Kelly*, 301 S.W.3d at 659 (noting once defendant presents evidence that it has no contacts with Texas, then plaintiff can respond with its own evidence to affirm its allegations).

Affidavits offered in a special appearance "shall be made on personal knowledge [and] shall set forth specific facts as would be admissible in evidence." Tex. R. Civ. P. 120a(3); *see also Ennis v. Loiseau*, 164 S.W.3d 698, 703 (Tex. App.—Austin 2005, no pet.). Special appearance affidavits must also be "direct, unmistakable, and unequivocal as to the facts sworn to." *Ennis*, 164 S.W.3d at 703; *see also Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 250 n.8 (Tex. App.— Houston [1st Dist.] 2004, pet. denied). A conclusory statement does not provide the underlying facts to support the conclusion. *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 670 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). Conclusory affidavits are not sufficient to raise fact issues because they are not credible or susceptible to being readily controverted. *Id.* (citing *Ryland Group v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam)). Affidavit testimony that is conclusory is substantively defective and amounts to no evidence.[12] *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 232 (Tex. 2004).

Here, appellees Kari, Bill, and Butcher & Butcher did not dispute that they attended the three board meetings or that they made the statements alleged by Hoagland. Appellees did not include any details regarding what statements were made during the presentations, whether the statements were made only as part of the presentations to a group, or whether appellees had any conversations with Hoagland, and, if so, the content of those conversations. Appellees merely stated they did not make misrepresentations to Hoagland in Texas regarding the business transaction made the basis of the captioned case. We conclude these statements are unsupported factual and legal conclusions. *See Ennis*, 164 S.W.3d at 703-04 (affirming trial court's exclusion of nonresident's statements that he did not have a

---

[12] Objections relating to substantive defects in affidavits are not waived by the failure to obtain a ruling from the trial court. *McMahan v. Greenwood*, 108 S.W.3d 467, 498 (Tex. App.— Houston [14th Dist.] 2003, pet. denied).

11

substantial connection with Texas, plaintiffs' claims did not result from and were not related to any of affiant's activities in Texas, affiant did not have any continuing or systematic contacts with Texas, and affiant did not commit any tort in Texas); *see also Wright*, 137 S.W.3d at 250 n.8 (holding nonresident's statement that he had committed no torts in Texas was properly excluded as conclusory).

Kassoff's affidavit is similarly conclusory. Kassoff stated he was not a manager or officer of OCTV when Hoagland "entered into [the] contract and commenced business activity with OCTV." Kassoff did not provide the underlying facts to support his conclusions that OCTV "ha[d] never had any contacts with Texas" and OCTV's communications with Hoagland all took place in California or on the telephone. *See Ennis*, 164 S.W.3d at 703-04; *see also Wright*, 137 S.W.3d at 250 n.8. We conclude appellees did not negate jurisdiction on a factual basis because they failed to present evidence that they had insufficient contacts with Texas. *See Kelly*, 301 S.W.3d at 659.

We next analyze whether appellees negated jurisdiction on a legal basis by showing even if Hoagland's alleged facts were true, the evidence is legally insufficient to support jurisdiction. *See id.* We thus address whether Hoagland's allegations, if true, established that appellees had sufficient minimum contacts with Texas to support the exercise of personal jurisdiction.

**Purposeful Availment**. To make this determination, we first analyze whether the nonresident defendants "purposefully availed" themselves of the privilege of conducting business in Texas. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). Purposeful availment is the "touchstone of jurisdictional due process." *Holten*, 168 S.W.3d at 784. Three key principles govern our analysis of purposeful availment. *Id.* at 785. First, the court considers the

12

defendant's own actions; it does not consider the unilateral activity of another party. *Id.* Second, the court considers whether the defendant's actions were purposeful rather than "random, isolated, or fortuitous." *Id.* Third, the defendant must seek "some benefit, advantage, or profit by 'availing' itself" of the privilege of doing business in Texas. *Id.* The defendant's contacts must be considered as a whole and not in isolation; we focus on the nature and quality of the contacts. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 n.11 (Tex. 1991); *Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 279 (Tex. App.—Houston [14th Dist.] 2009, no pet.). When there are multiple defendants, the contacts of each defendant must be analyzed individually. *See Calder v. Jones*, 465 U.S. 783, 790 (1984); *Minnis*, 305 S.W.3d at 279.

It is significant that appellees do not deny they conducted the presentations in Texas. *See Horizon Shipbuilding, Inc.*, 324 S.W.3d at 849. These were appellees' own actions. Attending the board meetings was purposeful and not random or fortuitous because appellees intended to obtain business and keep an ongoing business relationship with AFFT. Bill and Kari affirmed that they both "traveled to Texas on business related to [AFFT]." They both also affirmed that they "made several trips to Texas" on behalf of Butcher & Butcher "[o]ver the period of approximately one year." Also, as Hoagland alleged, OCTV was formed to "provid[e] political advocacy and fundraising services" to promote the FairTax Campaign, which OCTV does not deny.[13] Thus, appellees sought to profit from the presentations. *See id.* We conclude appellees purposely availed themselves of the privilege of conducting business in Texas. *See id.* at 848-49.

―――――――――

[13] OCTV argued it did not purposely avail itself of the privilege of doing business in Texas because the Operating Agreement contained a choice-of-law clause selecting California law. A choice- of-law clause is merely one factor to consider in determining whether a forum state has personal jurisdiction over a nonresident defendant, but it is not dispositive. *See Minnis*, 305 S.W.3d at 282.

13

**Substantial Connection to the Causes of Action**. Minimum contacts may give rise to two types of personal jurisdiction: specific jurisdiction and general jurisdiction.[14] *Minnis*, 305 S.W.3d at 279. When specific jurisdiction is asserted, as here, the court focuses on the relationship between the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575–76 (Tex. 2007). The cause of action must "arise out of or relate to" the nonresident defendant's contacts with the forum. *Guardian Royal*, 815 S.W.2d at 228. Specific jurisdiction over a nonresident defendant is established if the defendant's activities were purposefully directed to the forum state and there is a substantial connection between the defendant's forum contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

Appellees argue attending the board meetings did not "relate to" Hoagland's claims and telephone calls cannot support personal jurisdiction in Texas. Hoagland alleged fraud, fraudulent inducement, quantum meruit, and breach of contract claims. Hoagland's fraud and fraudulent inducement claims rest on what appellees communicated or failed to communicate at the board meetings in Houston and during Bill's phone call to Hoagland. *See Horizon Shipbuilding, Inc.*, 324 S.W.3d at 850; *see also In re FirstMerit Bank*, 52 S.W.3d at 758 (listing elements of fraud); *Haase*, 62 S.W.3d at 798 (noting fraud and fraudulent inducement share same elements). These claims require that Hoagland relied on what was or was not communicated and that Hoagland suffered injury as a result. *See Horizon Shipbuilding, Inc.*, 324 S.W.3d at 850. Thus, the operative facts for

---

[14] A single basis for personal jurisdiction is sufficient to confer jurisdiction over a defendant. *Minnis*, 305 S.W.3d at 279. The court need not address general jurisdiction if it finds that a defendant is subject to specific jurisdiction. *Id*. If the court finds specific jurisdiction over a defendant based on one cause of action, the court need not address jurisdiction as to any other causes of action. *Id*.

these claims are events that occurred in Houston and the content of the phone conversation between Bill and Hoagland. *See id*.; *see Minnis*, 305 S.W.3d at 282 (acknowledging a single telephone call, in conjunction with fraudulent misrepresentations made over a series of contacts, can support personal jurisdiction). Here, the alleged misrepresentations are the core of Hoagland's fraud claims and arguably of his breach of contract and quantum meruit claims because he alleges he entered into the contracts at issue in reliance on the alleged misrepresentations.[15] *See Horizon Shipbuilding, Inc.*, 324 S.W.3d at 850.

We conclude appellees did not negate jurisdiction on a legal basis because they failed to show that Hoagland's allegations, if true, would not support jurisdiction. *See Kelly*, 301 S.W.3d at 659. Thus, appellees' contacts with Texas, as alleged by Hoagland, were sufficient to confer specific jurisdiction on the Texas court.[16]

### III. Traditional Notions of Fair Play and Substantial Justice

If the nonresident defendant has minimum contacts with the forum state, we must then determine whether exercise of personal jurisdiction over the nonresident offends traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476; *Horizon Shipbuilding, Inc.*, 324 S.W. 3d at 851. In making this determination, we consider (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Nogle &*

---

[15] Hoagland's claims all arise from the same facts, so we do not need to analyze his other claims for jurisdictional purposes.

[16] We do not address general jurisdiction. *See Minnis*, 305 S.W.3d at 279.

*Black Aviation, Inc. v. Faveretto*, 290 S.W.3d 277, 285 (Tex. App.—Houston [14th Dist.] 2009, no pet.). When the nonresident defendant has purposefully established minimum contacts with the forum state, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 281 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Guardian Royal*, 815 S.W.2d at 231).

In a special appearance, a defendant bears the burden of presenting "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Horizon Shipbuilding, Inc.*, 324 S.W.3d at 851 (citing *Guardian Royal*, 815 S.W.2d at 231). Despite this burden, appellees did not analyze this issue in their special appearance motion. They merely listed the factors a court must consider, but did not argue that exercise of jurisdiction would offend traditional notions of fair play and substantial justice. As discussed above, we have concluded appellees purposely availed themselves of the Texas forum and there is a substantial connection between appellees' contacts with Texas and Hoagland's claims. Moreover, the state of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly disputes in which the defendant allegedly committed a tort in whole or in part in Texas. *See id.*; *see also D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.). We hold appellees did not show the trial court's exercise of personal jurisdiction over the nonresident would offend traditional notions of fair play and substantial justice.

### *Conclusion*

Having concluded appellant pleaded jurisdictional facts that appellees committed tortious acts in Texas and appellees did not negate every basis for jurisdiction, we conclude the trial court erred in granting appellees' special

appearance and dismissing the case. We reverse the trial court's order and remand for proceedings consistent with this opinion.



/s/    Martha Hill Jamison
       Justice


Panel consists of Justices Frost, Christopher, and Jamison (Frost, J., concurring) (Christopher, J., dissenting).