**Affirmed and Majority and Concurring Opinions filed June 30, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00858-CV

## PHILLIPS DEVELOPMENT & REALTY, LLC, Appellant

## V.

## LJA ENGINEERING, INC., F/K/A LJA ENGINEERING & SURVEYING, INC., Appellee

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-67390**

## M A J O R I T Y   O P I N I O N

This is an accelerated appeal by Phillips Development & Realty, LLC from the trial court's order denying the special appearance[1] filed by Phillips in this

---

[1] An objection to a Texas court's exercise of jurisdiction over a nonresident must be made by special appearance filed under Rule 120a of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 120a(2).

breach of contract suit brought by LJA Engineering & Surveying, Inc.[2] In four issues, Phillips asserts the trial court erred in denying its special appearance.[3] We affirm the trial court's order on the basis of specific jurisdiction.[4]

## BACKGROUND

Phillips is a Florida limited liability company with one office in Tampa, Florida. Phillips is in the real estate development business and is a parent company of numerous single-asset entities. PDRH is a North Carolina limited liability company with one office in Tampa, Florida. PDRH is a subsidiary of Phillips. LJA is a Texas corporation with its principal place of business in Houston, Texas. LJA is an engineering firm.

This dispute concerns the proposed development of two apartment complexes in Galveston County, Texas: one in Kemah and another in League City. Heath Hans signed a written contract purportedly on behalf of Phillips. Under this contract, which LJA signed, LJA agreed to provide engineering services to Phillips

[2] Initially, both defendant Phillips and defendant PDRH, LLC perfected their appeals of the trial court's order denying their special appearances. Defendant PDRH, LLC, however, withdrew its notice of appeal and was dismissed on July 2, 2015.

[3] Phillips argues the trial court erred in denying its special appearance in four issues: (1) Phillips's mistaken execution of a contract does not constitute the requisite purposeful availment for personal jurisdiction; (2) the evidence is legally and factually insufficient to support the trial court's finding of general jurisdiction; (3) the evidence is legally and factually insufficient to support the trial court's finding of specific jurisdiction; and (4) the exercise of personal jurisdiction over Phillips offends the traditional notions of fair play and substantial justice.

[4] LJA also asserts that Phillips's contacts with Texas support general jurisdiction. Minimum contacts may be established through contacts sufficient to support specific jurisdiction or general jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Because we resolve the issue based on specific jurisdiction, we do not reach the general jurisdiction argument. *See* Tex. R. App. P. 47.1 (opinion must address issues "necessary to final disposition of the appeal"); *see also Citrin Holding, LLC v. Minnis*, 305 S.W.3d 269, 279 & n.3 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (court need not address general jurisdiction if court finds defendant subject to specific jurisdiction). Accordingly, we recite here only the facts and arguments pertinent to our specific-jurisdiction analysis.

for the Kemah project. LJA also signed two contracts with PDRH to provide engineering services. Phillips asserts that it was not a proper party to the contract with LJA and that Phillips executed this contract by mistake because that contract allegedly should have been between LJA and PDRH.

*Kemah Project*

On January 31, 2008, LJA sent PDRH a proposal for boundary and topographic surveys for an 8-acre tract and a 15-acre tract of land. Based on this proposal, on April 15, 2008, LJA and PDRH entered into a Professional Services Agreement. Both the agreement and proposal were signed by Hans as preconstruction manager for PDRH.

On April 9, 2008, LJA sent Phillips a proposal that involved the full spectrum of engineering services necessary for the development and construction of the apartment complex in Kemah. Based on this proposal, on April 15, 2008, LJA and Phillips entered into a Professional Services Agreement (the "Agreement"). Both the Agreement and proposal were signed by Hans as preconstruction manager for Phillips. Two months later, Hans signed a letter agreement in which Phillips agreed to increase the Agreement's scope of work and the contract price. The Agreement is the center of the parties' dispute.

*League City Project*

On June 18, 2008, LJA sent Phillips a proposal for engineering services for the development and construction of the apartment complex in League City. Based on this proposal, on June 27, 2008, LJA and PDRH entered into a Professional Services Agreement. Both the agreement and proposal listed the client as Phillips; however, this was crossed out by handwriting and the name PDRH LLC was inserted. Cliff Minsley signed these documents on behalf of PDRH. On July 21,

2008, Yolanda Zimmerman, with the site development division of LJA, sent an internal email to LJA employee Heather Hammons, to "Please change name of Phillips Development (Client 1360) to PDRH, LLC. Proposal to follow." ("Internal Email"). There is no later-dated proposal between the parties in the record.

LJA provided engineering services for the projects from February 2008 through October 2012. All work was performed in Houston, Texas, and Galveston County, Texas. Phillips could not obtain sufficient financing and the project halted. LJA alleges that Phillips failed to pay amounts owed under the Agreement for services LJA rendered for the Kemah project. The total amount owed to LJA by Phillips on the Kemah project is $122,208.53, plus interest.

LJA filed suit against defendants in Harris County. LJA asserted a single claim against Phillips for breach of the Agreement, seeking to recover actual damages, interest, and reasonable attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. Phillips filed a special appearance challenging the trial court's ability to exercise personal jurisdiction over Phillips and seeking dismissal of LJA's claim against Phillips. The trial court denied the special appearance and entered findings of fact and conclusions of law. This appeal followed.

*Special Appearance Standard of Review*

Phillips challenges the trial court's denial of its special appearance. Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Horowitz v. Berger*, 377 S.W.3d 115, 121–22 (Tex. App.— Houston [14th Dist.] 2012, no pet.).

4

When, as here, the trial court issues findings of fact and conclusions of law in connection with its ruling on the special appearance, the appellant may challenge the trial court's factual findings on legal and factual sufficiency grounds. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We review the challenged factual findings by applying the same standards used in reviewing jury findings. *Horowitz*, 377 S.W.3d at 122. When reviewing for legal sufficiency, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding. *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827. We determine whether the evidence would enable reasonable and fair-minded people to find the fact at issue. *See id*. The factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony. *Id*. at 819. In reviewing for factual sufficiency, we consider all of the evidence and will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id*. We review the trial court's conclusions of law de novo. *Id*.

We analyze the propriety of a special appearance on the basis of "the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(3). On appeal, the scope of review in a special appearance case includes all evidence in the record. *Dodd v. Savino*, 426 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Horowitz*, 377 S.W.3d at 122. We do not address the merits of the lawsuit when we review an order denying a special appearance. *See Michiana Easy Livin' Country, Inc. v.*

5

*Holten*, 168 S.W.3d 777, 791–92 (Tex. 2005); *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

*Pleadings and the Evidence*

The plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. *Kelly v. General Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Id*. Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id*. The defendant can factually negate jurisdiction by presenting evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id*. at 659. The plaintiff can then respond with its own evidence that affirms its allegations. *Id*.

Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac*, 221 S.W.3d at 574. The Texas long-arm statute allows the exercise of personal jurisdiction over nonresident defendants who are parties to litigation arising from or related to business they conducted in Texas. Tex. Civ. Prac. & Rem. Code § 17.042. One of the ways in which a non-resident "does business" in Texas is by contracting with a Texas resident, by mail or otherwise, and either party is to perform the contract in whole or in part in Texas. *See id*.

LJA alleged in its live petition in relevant part that Phillips, a Florida company, entered into a written contract with LJA, a Texas corporation, for the performance by LJA of engineering and related services for an apartment project to be constructed in Galveston County, Texas, for Phillips. LJA alleged it performed

6

the services, but Phillips failed to pay and, as a result, LJA has suffered damages. LJA further alleged that Phillips's representatives traveled to Galveston County and Houston on approximately nine occasions to work on the projects, entered into contracts with other professionals in Texas to provide services to the projects and had a representative living in Houston, working on the projects.

We conclude LJA pleaded sufficient jurisdictional facts that Phillips was "doing business" in Texas; thus, the Texas long-arm statute pleading requirement is satisfied. *See* Tex. Civ. Prac. & Rem. Code § 17.042(1); *Huynh v. Nguyen*, 180 S.W.3d 608, 619–20 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("This minimal pleading requirement is satisfied by an allegation that the nonresident defendants are doing business in Texas."). Because LJA satisfied this pleading requirement, the burden shifted to Phillips to negate all bases of jurisdiction alleged by LJA. *Kelly*, 301 S.W.3d at 658.

Phillips argues that the court erred in denying the special appearance because it negated LJA's grounds for specific jurisdiction. More particularly, Phillips asserts that it was not a proper party to the contract at issue and its inclusion in the contract was a mistake, which cannot form the basis for a Texas court to exercise personal jurisdiction over a nonresident.[5]

A nonresident defendant may negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659. Factually, the defendant may present evidence that it has insufficient contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* Legally, the defendant may show that even if the plaintiff's

---

[5] Phillips claims the bases for specific jurisdiction pled by LJA were that it: (1) entered into a contract with LJA in Texas, (2) entered into contracts to purchase the real property located in Texas for the projects at issue, (3) entered into a contract with a third–party engineering firm in Texas, and (4) engaged LJA in numerous meetings in Texas. Because we conclude that Phillips entered into a contract with LJA in Texas and engaged in numerous meetings in Texas related to that contract, we need not consider the other bases pled.

7

alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id*.

When reaching a decision to exercise or decline jurisdiction, the trial court should rely only on the necessary jurisdictional facts and should not reach the merits of the case. *Baldwin v. Household Int'l, Inc.*, 36 S.W.3d 273, 277 (Tex. App.—Houston [14th Dist.] 2001, no pet.). However, if the court's jurisdiction in a specific–jurisdiction analysis hinges on the fact that the defendant entered into a contract with a resident of Texas to be performed in whole or in part by either party in Texas, as argued here, the defendant can defeat the attempted exercise of jurisdiction by a Texas court by proving that it did not enter into such a contract. *See Ross F. Meriwether & Assocs., Inc. v. Aulbach*, 686 S.W.2d 730, 732 (Tex. App.—San Antonio 1985, no writ.).

In its special appearance, Phillips attempted to negate LJA's bases for jurisdiction by attaching affidavits and exhibits to demonstrate a mistake in execution of the contract. In his affidavit, Donald Phillips, manager of Phillips and PDRH, attests that Phillips is a Florida company with an office in Tampa, Florida. He claims Phillips is a parent company of numerous single-asset entities and does not itself conduct developmental operations. He maintains that Phillips has never had offices or employees in Texas, owned property in Texas, or conducted business in Texas. Donald Phillips avers that the professional services agreement attached to LJA's petition as Exhibit A was mistakenly executed in Phillips's name. He asserts that LJA acknowledged this fact via the Internal Email and that Phillips's name on the contract should have been changed to PDRH. Phillips further contends that no work was performed by Phillips in Texas and all of the agreements were executed in Florida. Donald Phillips maintains that none of the agreements contains any jurisdictional or venue provisions and payment was not

required to be made in Texas. He further asserts that LJA's efforts to serve a demand letter on the company in Florida illustrates that LJA realized the appropriate jurisdiction was Florida.

Phillips also filed the affidavit and exhibits of Kevin Johnston, its chief operating officer. In his affidavit, Johnston attests that while Phillips is in the real estate development business, it does not, itself, conduct any real estate development operations. According to Johnston, when a land acquisition or development project is undertaken, a separate, single-asset entity is established in order to purchase the property and undertake the activities necessary to develop the property, including entering into contracts with persons involved in the development of the property.

Johnston avers that in this case, PDRH, a North Carolina limited liability company, was created to conduct the proposed development projects. Johnston contends that the Professional Services Agreement attached to LJA's petition should have been entered in the name of PDRH, but was mistakenly executed in Phillips's name. Johnston maintains that LJA was informed of the error and acknowledged the mistake via the Internal Email.

Johnston further asserts that Hans, the individual who mistakenly executed the Professional Services Agreement in the name of Phillips, was not an employee of Phillips and was not authorized to enter into any contracts in the name of Phillips. Johnston attests that the limited personal visits to the state of Texas in connection with the projects were by persons acting on behalf of PDRH, not Phillips. We conclude that Phillips's affidavits negated LJA's claimed bases for subjecting Phillips to jurisdiction in Texas. The burden then shifted back to LJA to respond with its own evidence that affirms its allegations establishing jurisdiction. *See*

9

*Kelly*, 301 S.W.3d at 659; *2007 E. Meadows, L.P. v. RCM Phoenix Partners, L.L.C.*, 310 S.W.3d 199, 204 (Tex. App.—Dallas 2010, pet. denied).

LJA filed its response to Phillips's special appearance and attached the affidavit and exhibits of Gregory Patch, Vice President of LJA. In relevant part, Patch described the three contracts and engineering services LJA provided to Phillips and PDRH, and attached the respective, signed contracts. He explained the engineering services performed for the projects involved real property in Galveston County and the services were performed in the Houston office of LJA. Patch detailed nine separate dates between February 8, 2008, and September 15, 2010, that named representatives of Phillips traveled to Houston and to Galveston County. He asserted that during the course of the work by LJA, LJA's and Phillips's representatives regularly discussed the work on the projects.

LJA also filed Patch's supplemental affidavit and exhibits. In his supplemental affidavit, Patch countered the statements made in Johnston's affidavit. Specifically, Patch maintained that Phillips did not make a mistake in execution of the contract for the Kemah project. Patch asserted that this fact is evidenced by copies of the title commitments for the properties in question that list the insured as Phillips, not PDRH. Patch further averred that the name of the contracting party was changed from Phillips to PDRH on only the contract for the League City project. He asserted that the name change referenced in the Internal Email was not intended to affect the Kemah contract. He claimed Phillips remained throughout their dealings as the contracting party with LJA on the Kemah project. He additionally described and attached an email from Hans in which Hans represents himself as Phillips's preconstruction manager. Patch also described and attached an email from Donald Phillips in which he confirms his commitment to finish the Kemah project. Finally, he detailed a meeting in which

10

Donald Phillips came to Houston, met with him, and requested that LJA continue to work on the project and told him LJA invoices would be paid.

*Evidentiary Objections and Rulings*

Phillips filed written objections to Patch's affidavits. Phillips lodged five objections to the original affidavit, including in relevant part, that Patch's testimony that defendants "accepted" LJA's engineering services was conclusory. Additionally, Phillips objected to Patch's supplemental affidavit in its entirety as being untimely and not properly before the trial court because it was filed three days before the special appearance hearing. Phillips also lodged several specific objections to Patch's supplemental affidavit, including in relevant part, that Patch's testimony that the Internal Email was not intended to affect the Kemah contract is conclusory. Although the trial court denied the special appearance and issued findings of fact and conclusions of law, neither of these 2014 orders contained written evidentiary rulings. The trial court did ultimately sign a written order overruling all objections almost one year after ruling on the special appearance and well after appellant filed its opening brief.

As a threshold matter, LJA acknowledges that Patch's supplemental affidavit was filed shortly before the special appearance hearing. Further, we acknowledge that Tex. R. Civ. P. 120a(3) provides that any affidavits filed by the parties "shall be served at least seven days before the hearing." *Tempest Broad. Corp. v. Imlay*, 150 S.W.3d 861, 870 (Tex. App.—Houston [14th Dist.] 2004, no pet.). However, we also recognize that Rule 120a(3) states:

11

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Hence, it is apparent that the trial court has discretion to allow the opposing party to file late affidavits under Rule 120a(3) or to enter other orders as are just. *See Imlay*, 150 S.W.3d at 870 (citing *Potkovick v. Reg'l Ventures, Inc.*, 904 S.W.2d 846, 850 (Tex. App.—Eastland 1995, no writ) (holding that trial court does have some discretion under Rule 120a to enter other orders as are "just")). "Otherwise . . . a movant under Rule 120a could wait until seven days before the hearing to file its affidavits preventing the opposition from filing controverting affidavits." *Potkovick*, 904 S.W.2d at 850. Here, we conclude that Phillips has failed to establish that the trial court abused its discretion in considering the late-filed affidavit. *Giacomini v. Lamping*, 42 S.W.3d 265, 269–70 (Tex. App.—Corpus Christi 2001, no pet.); *Leben v. Treen*, No. 13-020309-CV, 2003 WL 22479150, at *2 (Tex. App.—Corpus Christi Oct. 30, 2003, no pet.) (mem. op.) ("In a special appearance proceeding, the trial court has discretion to consider a late–filed affidavit.").

Moreover, it was incumbent upon Phillips to obtain a prompt ruling or preserve a refusal to rule on its objections. *Dolcefino v. Randolph*, 19 S.W.3d 906, 925 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). However, Phillips did not need an explicit ruling to preserve the evidentiary error or to challenge that error; an implicit ruling is adequate. *See* Tex. R. App. P. 33.1(a)(2)(A). The trial court's findings of fact and conclusions of law, signed within 30 days of the special appearance order, liberally cited the affidavits to which Phillips objected. For example, in its findings, the trial court refers to the Patch affidavit attached to Plaintiff's "Supplemental Response," an affidavit to which Phillips objected as

untimely. We conclude that, based on this record and the trial court's reliance upon objected-to evidence as support for the findings, the trial judge implicitly overruled Phillips's objections. *See* Tex. R. App. P. 33.1(a)(2)(A). Yet, Phillips presented no issue in its opening brief complaining of the trial judge's implied rulings.[6] Nor did Phillips assign error to the trial court's refusal to promptly rule.

We conclude the evidentiary issues raised in Phillips's reply brief are waived because they were omitted from Phillips's opening brief; therefore, we do not address them. *See Grace Interest, LLC v. Wallis State Bank*, 431 S.W.3d 110, 124 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (reciting the rule against adding new issues in a reply brief); *see also* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Nevertheless, we liberally construe Phillips's legal and factual sufficiency challenges as arguments that the affidavits were conclusory and will address that issue.[7]

Affidavits offered in a special appearance "shall be made on personal knowledge [and] shall set forth specific facts as would be admissible in evidence." Tex. R. Civ. P. 120a(3); *Hoagland v. Butcher*, 396 S.W.3d 182, 192–93 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Special appearance affidavits must also be "'direct, unmistakable, and unequivocal as to the facts sworn to.'" *Id*. A conclusory statement does not provide the underlying facts to support the conclusion. *Id*. Conclusory affidavits are not sufficient to raise fact issues because

---

[6] In footnotes, Phillips states the basis for its objections to the trial court and states "should the trial court rule," Phillips would supplement the record.

[7] Phillips filed a supplemental clerk's record that contained the trial court's written rulings on the objections. Neither Phillips's opening brief nor its reply brief present substantive legal arguments to support its challenges.

they are not credible or susceptible to being readily controverted and, therefore, amount to no evidence. *See id.*

Here, Phillips's complaint, that certain statements in Patch's original affidavit, that Phillips "accepted" LJA's engineering services, are conclusory, is without merit. Patch described his role in LJA, his substantial oversight and supervision of the work done by LJA for Phillips, and a detailed description of the engineering services performed by LJA for the Kemah project. He further described during the course of the performance of the work by LJA over a four-year period; LJA representatives, including Patch, regularly discussed the work with Phillips's representatives. *See Southtex 66 Pipeline Co., Ltd. v. Spoor,* 238 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("To avoid being conclusory, an affidavit must contain specific factual bases, admissible in evidence and upon which conclusions are drawn."); *First Nat'l Bank in Munday v. Lubbock Feeders, L.P.*, 183 S.W.3d 875, 881 (Tex. App.—Eastland 2006, pet. denied) ("A person's position or job responsibilities can peculiarly qualify him to have personal knowledge of facts and establish how he learned of the facts."). Patch provided underlying facts to support the proposition that Phillips accepted LJA's engineering services.

Similarly, Phillips's contention that Patch's testimony–*i.e.*, that the name on only one contract was intended to be changed to PDRH from Phillips–is conclusory lacks merit. Patch's supplemental affidavit described work on the contract that was changed (the League City project) and on the Agreement that remained with Phillips (the Kemah project) throughout the four years of dealings. Copies of both contracts were attached. He also attached an email that identified the job title of Hans, who signed the Kemah project contract, as preconstruction manager for Phillips. Patch also attached to his supplemental affidavit title

14

commitments to the property in question that listed the insured as Phillips. Additionally, he described and included emails from Don Phillips confirming the commitment of Phillips to finish the project upon which LJA had rendered the engineering services. Moreover, a copy of the Agreement was attached to his affidavits. Contrary to Phillips's contention, Patch's affidavits provided detailed facts supporting the challenged statements. *See Lubbock Feeders, L.P.*, 183 S.W.3d at 881; *Nichols*, 153 S.W.3d at 570. We conclude that these statements were not conclusory.

*Analysis*

In this case, the trial court made the following relevant findings of fact:

- LJA and Phillips entered into the Agreement. (#2)

- The Agreement provided for LJA to supply Phillips with engineering services in connection with the acquisition, development and construction of the two apartment projects. (#4)

- Pursuant to the Agreement, LJA performed the services as described in the invoices (attached to Patch's affidavit) in Houston, Texas, and Galveston County, Texas, for the Kemah project. (#5)

- Phillips accepted the engineering services performed by LJA on its behalf. (#7)

- All services performed by LJA for Phillips involved real property located in Galveston County, Texas, and all services were performed in the Houston office of LJA with employees located in Houston, Texas and the surrounding area. (#8)

- During the course of performing the work for Phillips, LJA sent documents to Phillips's representatives for review and comment. Phillips's representatives regularly called LJA's representatives to discuss the work and sent revisions and comments to the work to LJA's representatives in Houston. LJA's and Phillips's representatives had regularly scheduled telephone conferences regarding the projects. (#9)

15

- Agents, employees, or representatives of Phillips traveled to Houston and to Galveston County, Texas, on at least nine occasions during the relationship with LJA to perform work and services in connection with the projects. (#13)

- Kevin Johnston, Chief Operating Officer of Phillips, came to Houston in connection with the projects. (#13)

- Hans signed the Agreement on behalf of Phillips, and an email (attached to Patch's affidavit) shows his title as preconstruction manager for Phillips. (#20)

- Hans was an employee of Phillips authorized to act on behalf of Phillips to execute the Agreement. (#21)

- Emails from Donald Phillips, managing director of Phillips, confirmed the commitment of Phillips to finish the Kemah project upon which LJA rendered the engineering services. (#22)

- Donald Phillips came to Houston, Texas, met with Gregory Patch, personally requested that LJA continue to work on the Kemah project, and told Gregory Patch that the LJA invoices would be paid.

The trial court found that Phillips entered into three contracts with LJA (Finding #2 and #4), that Hans was authorized to execute the Agreement on behalf of Phillips (Finding #20, #21), and that LJA performed the contracts in Texas (Finding #4, #5, #7, #8).[8] Applying the applicable standards of review, we conclude that Phillips has not demonstrated that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Horowitz*, 377 S.W.3d at 122. Thus, we conclude that Phillips was "doing business" as necessary to

---

[8] Phillips has not specifically challenged any of the trial court's findings. A challenge to an unidentified finding of fact may be sufficient if we can fairly determine from the argument the specific finding of fact that the appellant challenges. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005). Phillips argues that the trial judge erred in denying its special appearance based on specific jurisdiction because it allegedly: (1) entered into a contract with plaintiff in Texas, and (2) engaged plaintiff in numerous meetings in Texas. We construe this as a challenge to the trial court's findings #2, #4, #7, and #21.

16

satisfy the Texas long-arm statute under Tex. Civ. Prac. & Rem. Code § 17.042(1).

*The Evidence was Sufficient to Satisfy Due Process*

In order for the court to assert personal jurisdiction over Phillips, LJA must establish not only that the Texas long-arm statute applies but that the minimum-contacts analysis required for due process is met. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002); *see also Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 412–13 & n.7 (1984). Federal due process is satisfied if (1) the nonresident defendant has "minimum contacts" with Texas and (2) the exercise of personal jurisdiction over the nonresident defendant does not offend "traditional notions of fair play and substantial justice." *See BMC Software*, 83 S.W.3d at 795 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When, as here, a plaintiff asserts specific jurisdiction, the minimum contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007). Minimum contacts are sufficient when a nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Thus, to establish specific jurisdiction, LJA must show both that Phillips purposefully sought to avail itself of the privileges of conducting business in Texas and that its causes of action arose from Phillips' contacts with Texas. *Moki Mac*, 221 S.W.3d at 585. Purposeful availment requires that a defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction. *Moki Mac* 221 S.W.3d at 578; *see also Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 884 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Phillips asserts that the mistaken execution of the Agreement cannot constitute the requisite purposeful availment to establish minimum contacts because it was signed by mistake and the name on the Agreement should have been changed. Phillips further argues that any meetings in Texas that may have taken place were with persons representing PDRH or did not concern the projects at issue.[9]

We construe Phillips's arguments as a challenge to the trial court's findings #2, #4, #7, #19, #20, #21, and #23. Under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial judge's conclusion that Phillips "purposefully availed [itself] of the privilege of conducting activities within Texas" and that "[LJA's] suit arose from and was related to [Phillips'] contacts with Texas." *See Holten*, 168 S.W.3d at 784; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 & n.18 (1985). Far from seeking to avoid Texas, Phillips sought out Texas and the benefits and protections of its laws. *See Holten*, 168 S.W.3d at 785; *BMC Software*, 83 S.W.3d at 795. Accordingly, we overrule Phillips's first and third issues.

*Exercise of Jurisdiction will not Offend Fair Play and Substantial Justice*

We now determine whether assertion of jurisdiction over Phillips comports with traditional notions of fair play and substantial justice. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009). Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Id*.

> Nonetheless, we still consider: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the

---

[9] We construe this last argument as a challenge to finding #23.

plaintiff's interest in obtaining convenient and efficient relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id*. "To defeat jurisdiction, [Phillips] must present a compelling case that the presence of some consideration would render jurisdiction unreasonable"— something Phillips has not done. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878–79 (Tex. 2010) (internal citations omitted).

On balance, asserting personal jurisdiction over Phillips would not offend traditional notions of fair play and substantial justice. Subjecting Phillips to suit in Texas certainly imposes a burden on it, but the same can be said of all nonresidents. Distance alone cannot ordinarily defeat jurisdiction. *Spir Star AG*, 310 S.W.3d at 879 ("Nor is distance alone ordinarily sufficient to defeat jurisdiction: modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (internal quotations omitted)). Other than Phillips's general statement that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice because it is a Florida entity with no offices, property, or employees in Texas, nothing in the record indicates litigation in Texas would be a hardship. Phillips activities were directed at its acquisition of real property in Galveston County, Texas, in order to construct, develop, and operate multi-family apartment units in Kemah, Texas. In the exploration of this business endeavor, Phillips representatives traveled multiple times to Texas. They sought and contracted the engineering services of LJA in Texas. These facts negate Phillips's allegations that litigation in Texas would impose a "significant" burden on Phillips. Requiring Phillips to defend LJA's claim in Texas "would not pose an undue burden for the company" as Texas "is familiar territory for [Phillips's] leadership." *See Spir Star AG*, 310 S.W.3d at 879.

19

Texas courts also have an interest in this litigation because of the alleged breach of the Agreement that allegedly resulted in damages to a Texas corporation. LJA is a Texas corporation with its principal place of business in Harris County. The actions constituting Phillips's alleged breach of contract occurred in Texas. Because there is a "substantial connection" between Phillips's contacts with Texas and the operative facts of the litigation, it would not offend any interest of the interstate judicial system to require Phillips to answer claims in Texas. *See Moki Mac*, 221 S.W.3d at 585. We conclude that the exercise of jurisdiction over Phillips in Texas is reasonable and does not offend traditional notions of fair play and substantial justice. Accordingly, we overrule Phillips's fourth issue.[10]

## CONCLUSION

Having determined that the Texas long-arm statute authorizes the assertion of personal jurisdiction over Phillips, Phillips had the requisite minimum contacts with Texas and purposefully availed itself of the privilege and benefits of conducting business here, LJA's claims arise from and are related to Phillips's contacts with Texas, and the trial court's exercise of personal jurisdiction over Phillips comports with traditional notions of fair play and substantial justice, we overrule Phillips's four issues and affirm the order of the trial court denying Phillips's special appearance.


/s/    Martha Hill Jamison
Justice


Panel consists of Chief Justice Frost, Justice Jamison, and Justice McCally. (Frost, C.J., concurring).

---

[10] Having concluded that the trial court did not err in denying Phillips's special appearance because Phillips is subject to specific jurisdiction in Texas, we need not address Phillips's issue and argument in which it contends that it is not subject to general jurisdiction.

20