

**NUMBER 13-16-00219-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

### IN RE FEDERAL CORPORATION

### On Petition for Writ of Mandamus

# MEMORANDUM OPINION ON REHEARING[1]

### Before Justices Benavides, Perkes and Longoria
### Memorandum Opinion by Justice Longoria

In this original proceeding, relator Federal Corporation ("Federal") petitions for a writ of mandamus to compel the trial court to withdraw its order requiring Federal to fully respond to numerous discovery requests.[2] We conditionally grant mandamus relief in part and deny relief in part.

---

[1] The Court handed down a memorandum opinion in this case on September 1, 2016. Real party in interest Jose Eduardo Gonzalez has now filed a motion for reconsideration. We deny the motion but, in the exercise of our plenary power, withdraw our previous memorandum opinion and issue the following corrected memorandum opinion in its place.

[2] The respondent in this proceeding is the honorable Mario E. Ramirez, presiding judge of the

## I. BACKGROUND

Real party in interest Jose Eduardo Gonzalez ("Gonzalez") became quadriplegic as a result of a vehicle rollover accident caused by a tire failure that allegedly resulted from a tread separation. Following the accident, Gonzalez brought suit against multiple defendants for negligence and strict product liability. Relevant to this proceeding, Gonzalez alleged that Federal designed, manufactured, and shipped the tire which caused the accident.

Federal, a corporation based in Taiwan, responded with a special appearance asserting that the trial court lacked personal jurisdiction. *See* Tex. R. Civ. P. 120a. Gonzalez then propounded over 100 separate discovery requests pursuant to Federal's special appearance. For purposes of this proceeding, we follow Federal in dividing the requests into three groups: requests which seek information regarding Federal's activities in Texas; requests which seek information regarding the same activities in the states of the United States other than Texas; and requests which seek information related to the merits of the case. Federal answered the first set of requests but objected to the second and third sets on the ground they were calculated to produce information irrelevant to the special appearance.[3]

Gonzalez filed a motion seeking to compel Federal to fully respond to discovery. Following a hearing at which both parties were represented by counsel, the trial court

---

332nd District Court of Hidalgo County.

[3] Some of the requests in the first and second group overlap, such as when a subpart of a request seeks information regarding a certain type of Federal's activities in Texas and a second subpart seeks information on the same type of activity in the entire United States except for Texas. When that occurs, we count the subparts as separate discovery requests.

2

granted the motion in an order which also limited the geographic scope of the second set of requests to Texas and Mississippi.

This original proceeding ensued.[4]   This Court stayed the trial court's order compelling discovery and requested a response.  This Court received a response from Gonzalez and a reply to the response from Federal.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

### A.  Mandamus Standard

To be entitled to the extraordinary relief of the writ of mandamus, the relator must show both that (1) the trial court abused its discretion and (2) there is no adequate remedy by appeal.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).  The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one.  *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding).  A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law.  *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding).

### B.  Scope of Discovery

The Texas Rules of Civil Procedure provide a right to discovery "of any matter that is not privileged and is relevant to the subject matter of the pending action."  TEX. R. CIV. P. 192.3(a).  We broadly construe the phrase "relevant to the subject matter" to afford litigants "the fullest knowledge of the facts and issues prior to trial."  *Ford Motor Co. v.*

---

[4] The trial court's order compelling discovery specifically limited the geographic reach of the discovery requests to Texas and Mississippi, but neither party has addressed that restriction in its briefing. We will address the discovery requests as they have been presented to us.

3

*Castillo*, 279 S.W.3d 656, 664 (Tex. 2009). The Texas Rules of Evidence define "relevant" evidence as that which makes a fact of consequence to the action more or less likely than it would be without the evidence. TEX. R. EVID. 401.

The scope of discovery is generally within the trial court's discretion, but the trial court must attempt to impose reasonable discovery limits. *In re Graco Children's Products, Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding) (per curiam). While the scope of discovery is broad, permissible discovery requests "must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX Corp.*, 124 S.W.3d at 152 (citing *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding)). However, a request is not overbroad merely because it may call for some information of doubtful relevance. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam). A "central consideration" in determining overbreadth is whether the request could have been more narrowly tailored to avoid including irrelevant information but still obtain necessary, pertinent information. *In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding).

### III. INFORMATION RELEVANT TO A SPECIAL APPEARANCE

Federal argues in its first issue that the second grouping of requests are overbroad because they are calculated to disclose information regarding its contacts with states other than Texas. According to Federal, such information is irrelevant because it does not make any fact germane to the special appearance more or less likely. Resolving this issue requires us to first discuss relevancy in the context of discovery and how it applies to a special appearance.

#### A. Law Applicable to a Special Appearance

4

Texas Rule of Civil Procedure 120a provides that any party may file a special appearance "for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State." TEX. R. CIV. P. 120a(1). The party bringing the special appearance is entitled to have it heard and decided before any other pleading. *See id.* R. 120a(2). A court should not reach the merits of the case when deciding a special appearance. *Phillips Dev. & Realty, LLC v. LJA Eng'g, Inc.*, No. 14-14-00858-CV, ___S.W.3d ___, ___, 2016 WL 3610457, at *3 (Tex. App.—Houston [14th Dist.] June 30, 2016, pet. filed). Rule 120a specifically provides for jurisdictional discovery, *see id.* R. 120a(3), but discovery "is limited to matters directly relevant to the issue" of jurisdiction. *In re Doe*, 444 S.W.3d 603, 608 (Tex. 2014) (orig. proceeding).

Two issues are relevant to whether Texas courts may exercise personal jurisdiction over a defendant: (1) the Texas long arm statute must authorize jurisdiction; and (2) the exercise of jurisdiction must comply with federal and state constitutional guarantees of due process. *Searcy v. Parex Res., Inc.*, No. 14-0293, ___ S.W.3d ___, ___, 2016 WL 3418248, at *5 (Tex. June 17, 2016). Because the long arm statute "provides for personal jurisdiction that extends to the limits of the United States Constitution," Texas courts address only whether federal due process requirements permit the exercise of jurisdiction. *See id.*

Whether jurisdiction complies with due process depends on two factors: (1) the defendant must have established minimum contacts with the forum state; and (2) the assertion of jurisdiction must not offend "traditional notions of fair play and substantial justice." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016) (citing *Int'l Shoe Co. v. Wash.*,

5

326 U.S. 310, 316 (1945)).  As relevant to our analysis in this case, sufficient minimum contacts exist when the defendant "purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  The purposeful-availment analysis looks to "contacts that the defendant 'purposefully directed' into the forum state" rather than "random, fortuitous, isolated, or attenuated" connections with the forum.  *Searcy*, ___ S.W.3d at ___, 2016 WL 3418248, at *5*.

Minimum contacts can create two forms of jurisdiction: specific and general. Specific jurisdiction exists when the plaintiff's cause of action "arises from or relates to the defendant's contacts" with the forum state.  *Cornerstone Healthcare Group Holding, Inc. v. Nautic Mgmt. VI, L.P.*, No. 14-0538, ___ S.W.3d ___, ___, 2016 WL 3382159, at *4 (Tex. June 17, 2016).  The specific-jurisdiction analysis focuses "on the relationship among the defendant, the forum[,] and the litigation."  *Id.* (internal quotation marks omitted, brackets in the original).  General jurisdiction, by contrast, exists when the defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A court with general jurisdiction over a defendant may decide a case even if the plaintiff's cause of action did not arise from the defendant's contacts with the forum.  *TV Azteca*, 490 S.W.3d at 37.  The effect of the minimum contacts analysis is that a state may exercise jurisdiction over a nonresident defendant only when its "conduct and connection to a forum are such that it could reasonably anticipate being haled into court there."  *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 152 (Tex. 2013).

Even when a defendant has established minimum contacts with a state, due process permits state courts to assert jurisdiction only if it is consistent with "traditional notions of fair play and substantial justice." *TV Azteca*, 490 S.W.3d at 55. If a defendant has purposefully availed itself of the privilege of conducting business in the forum state, subjecting that defendant to the forum state's courts will typically not offend due process. *Id.* Nevertheless, courts consider several factors to evaluate whether the assertion of jurisdiction by a forum is fair and just: (1) the burden on the defendant litigating the dispute in the forum; (2) the forum state's interest in litigating the dispute; (3) the plaintiff's interest "in obtaining convenient and effective relief"; (4) the interest of the interstate or international judicial system in obtaining the most efficient resolution of controversies; and (5) "the shared interest of the several nations or states in furthering fundamental substantive social policies." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 879 (Tex. 2010).

The summary of the law of personal jurisdiction in the preceding paragraphs is necessarily overly general, but we conclude from it that information "directly relevant" to a special appearance would make it more or less likely that the defendant (1) purposefully availed itself of the privilege of conducting activities in the forum, or (2) has contacts with the forum which are sufficiently "continuous and systematic" to create jurisdiction. Relevant information also includes that which makes one of the factors for determining whether the exercise of jurisdiction offends traditional notions of fair play and substantial justice more or less likely. *See In re Doe*, 444 S.W.3d at 608; *see also* TEX. R. CIV. P. 192.3(a).

**B. Are an International Defendant's Contacts with Another State Relevant?**

7

In *Walden v. Fiore*, the United States Supreme Court addressed a lower court's conclusion that Nevada courts could exercise personal jurisdiction over a nonresident defendant who committed a tort in a different state against residents of Nevada. ___ U.S. ___, ___, 134 S. Ct. 1115, 1120 (2014).[5] The lower court reasoned that even though the victims of the tort were outside of Nevada at the time, personal jurisdiction was permissible because the defendant knew that the persons had a "significant connection" to Nevada. *Id.* A unanimous Court rejected the lower court's conclusion and reiterated that the minimum-contacts analysis "focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 1121. The Court clarified that it is the defendant's contacts "*with the forum State itself*, not the defendant's contacts with the people who reside there," which are relevant. *Id.* at 1122 (emphasis added). While *Walden* involved tort-based jurisdiction, the personal jurisdiction analysis in general focuses on the defendant's contacts with the forum state itself rather than with other locations. *See id.*

The lesson we draw from *Walden* is consistent with what a plurality of the Court wrote in *J. McIntyre Mach., Ltd. v. Nicastro*. 564 U.S. 873, 878–79 (2011) (plurality op.). The issue in *Nicastro* was whether New Jersey courts could exercise personal jurisdiction over an English manufacturer of a product which allegedly harmed a resident of New Jersey. *Id.* After summarizing the due process requirements for personal jurisdiction, a four-justice plurality observed that implicit in the law of personal jurisdiction is the principle that

---

[5] *Walden v. Fiore* involved a suit brought originally in federal rather than state court. ___ U.S. ___, ___, 134 S. Ct. 1115, 1120 (2014). The Court's analysis is applicable to this case because "a federal district court's authority to assert personal jurisdiction in many cases" is determined by whether the defendant is subject to service of process in a court of general jurisdiction in the state in which the court is located. *Id.* at 1121 (citing FED. R. CIV. P. 4(k)(1)(A)).

personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis. The question is whether a defendant has followed a course of conduct *directed at the society or economy existing within the jurisdiction of a given sovereign*, so that the sovereign has the power to subject the defendant to judgment concerning that conduct.

*Id.* at 884 (emphasis added). In other words, personal jurisdiction arises from contacts directed at the society within the jurisdiction of the forum state. *See id.* Whether the defendant directed contacts elsewhere is not part of the analysis.[6] *See id.* at 886 (observing that it is the nonresident's "purposeful contacts with New Jersey, not with the United States, that alone are relevant" to the analysis); *see also Hanson*, 357 U.S. at 253.

*Walden* and *Nicastro* are consistent with cases from the Supreme Court of Texas on personal jurisdiction. In *Searcy*, for example, the court held that there was no general jurisdiction over a Canadian corporation because it had "no bank accounts, offices, property, employees, or agents in Texas" and had "not interacted with Texas" aside from its dealings with one of the parties to the case. ___ S.W.3d at ___, 2016 WL 3418248, at *9. Texas courts could not exercise specific jurisdiction either because the Canadian defendant "did not specifically seek out a Texas seller or Texas assets, let alone attempt[ ] to meddle with a contract governed by Texas law or develop a Texas business." *Id.* The analysis employed by the Supreme Court of Texas in *Searcy* is consistent with our analysis: evaluating the defendant's contacts with the forum without considering the defendant's contacts directed at other locations. *See id.*

---

[6] While *J. McIntyre Mach., Ltd. v. Nicastro* was a plurality, the concurring opinion did not disagree that the proper personal jurisdiction analysis is focused on the defendant's contacts with the forum rather than other locations. *See* 564 U.S. 873, 891 (2011) (Breyer, J., concurring, joined by Alito, J.) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). In fact, the concurring justices agreed that the opinion of the court below should be overturned because it departed from the "accepted inquiry of whether, focusing upon the relationship between 'the defendant, the *forum,* and the litigation,' it is fair, in light of the defendant's contacts *with that forum,* to subject the defendant to suit there." *Id.* The concurrence's disagreement was with the "strict rules" favored by the plurality regarding jurisdiction when the defendant did not intend to submit to the sovereign. *See id.* at 890.

9

Gonzalez argues that Federal's location outside of the United States is a significant difference which makes Federal's contacts with other states relevant to the second prong of the analysis. Gonzalez interprets *Asahi Metal Industries Co., Ltd. v. Superior Court of California, Solano County* as requiring him to show that any American court could exercise jurisdiction over Federal. 480 U.S. 102, 114 (1987). Gonzalez reads *Asahi* too broadly. The Court in *Asahi* held that the "unique burdens placed upon one who must defend oneself in a foreign legal system" must be accorded "significant weight" in the personal-jurisdiction analysis, but the Court gave no indication that it altered the forum-centered nature of the analysis by that language. *See id.* The Court went on to analyze the burden on Asahi, a Taiwanese corporation, in litigating the case specifically in California, and also considered the interests of California in having the dispute litigated there. *Id.* at 114–15. The Court made no mention of the interest of the United States as a whole or whether other states would be able to exercise jurisdiction over Asahi. *See id.*; *see also Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 229 (Tex. 1991) (citing the same part of *Asahi* as instructing courts to give more weight to the international status of the defendant). We reject Gonzalez's argument that is based on *Asahi*.

Applying the lessons of *Walden*, *Nicastro,* and relevant Texas case law, we agree with Federal that its contacts with states other than the forum are not relevant to its special appearance. *See In re Doe*, 444 S.W.3d at 608. Information on the defendant's activities directed at a location other than the forum do not make it any more or less likely that the defendant purposefully directed contacts at the forum. *See* TEX. R. EVID. 401. Therefore, discovery requests which are not reasonably tailored to disclose only the defendant's

10

activities directed at the forum are overbroad. *See In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d at 488 (holding that discovery requests must be "reasonably tailored to include only matters relevant to the case").

We stress that we do not mean that only contacts inside the geographic boundaries of the forum are relevant to a special appearance. Activities which take place outside of the boundaries of the forum but which are purposefully directed towards it can support jurisdiction. *See World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (holding that when the sale of a product in the forum by a nonresident defendant "is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product" in the forum state, the forum's court may properly assert jurisdiction); *see also Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007) (observing that "the mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts" but noting that "the facts alleged must indicate that the seller intended to serve the Texas market"). Put more simply, it is not necessary that activity which is purposefully directed towards a forum take place inside of it.

## C. Application to Specific Discovery Requests

We now apply our conclusion to the specific discovery requests challenged by Federal in the second grouping—those requests which Federal asserts seek information regarding Federal's contacts with locations other than Texas.

### 1. Requests Which Seek Information Regarding Federal's Activities in States Other than Texas

This subset of requests encompasses interrogatories 3(a), 16, 18(a), 18(b), 19(a), 19(b), 20(a), 20(b), 21(a) and 21(b), and requests for production 2(c), 5(b), 6, 7(a)–(c),

11

7(d)(ii), 7(e)(ii), 7(f)-(i), 11, 13(b), and 13(d). We agree that all but one of the requests in this group are overbroad because information on Federal's activities which are not directed at Texas is not "directly relevant" to the subject matter of its special appearance. *See In re Doe*, 444 S.W.3d at 608. Furthermore, each request in this group is written to disclose a broad swath of information and could easily have been more narrowly tailored to focus on Texas-directed contacts.[7] *See Hernandez v. Abraham, Watkins, Nichols, Sorrels & Friend*, 451 S.W.3d 58, 68 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding that discovery requests were overbroad in part because the requests "were not, but could have been, more narrowly tailored to the dispute at hand"). One request, however, has a subpart which seeks information from Texas: Interrogatory 21(b) seeks information on the number of Federal's tires that were registered in Texas in the relevant time period. This request is not overbroad because it is limited in scope to Texas. With the exception of Interrogatory 21(b), we conclude that the trial court abused its discretion to the extent it directed Federal to respond to the first subset of discovery requests. *See In re Graco Children's Products, Inc.*, 210 S.W.3d at 600.

### 2. Requests Seeking Federal's Compliance with United States Laws and Regulations

The second subset of requests encompasses requests for admission 4, 6, 8, 10, and 24; interrogatories 11 and 13; and requests for production 8, 9, 20(a), and 20(b). The requests in this subset seek (1) information on Federal's compliance with United States safety laws and regulations when manufacturing the brand of tire which caused the accident; (2) information on whether Federal complied with other applicable federal

---

[7] We note that the parties did not address whether any specific discovery request in this subset of discovery could have been more narrowly tailored. Instead, they addressed all of the requests in this subset as one group. We do the same.

legislation, such as the reporting requirements of the TREAD Act[8]; and (3) any trademarks or patents held by Federal or for its benefit in the United States applicable to the tire. Federal argues that this subset of requests is similar to those we addressed in the first subset because the requests in the second subset seek irrelevant information on Federal's contacts with states other than Texas. Gonzalez responds that the information sought by these requests is relevant because it could make it more likely that Federal sought to avail itself of the American market, which includes Texas.

We agree with Gonzalez. If Federal complied with United States laws and regulations applicable to its products, or if it used American trademark and patent laws to protect their design and appearance, it makes it more likely that Federal sought to purposefully serve the American market it in some way. *See Searcy*, ___ S.W.3d at ___, 2016 WL 3418248, at \*5. We agree with Federal that its compliance with these laws could but does not necessarily mean it specifically intended to serve the Texas market, but that is precisely the distinction between the first and second set of requests. The first set of requests sought information on Federal's business activities in states of the United States other than Texas. A request for such information could be tailored to focus on activities in a particular state, but the federal laws referenced in the second subset of requests apply uniformly across the United States. *See, e.g.*, 49 U.S.C. § 30112(a)(1) (West, Westlaw through P.L. 114–181) (excluding vehicles which do not comply with motor vehicle safety standards from interstate commerce subject to statutory exceptions). Federal would be required to comply with these laws whether it sought to serve the Texas market or solely the market of another state. *See id.*; *see also id.* § 30103(b) (West,

---

[8] *See* Transportation, Recall Enhancement, Accountability, and Documentary (TREAD) Act, P.L. 106-414, 114 Stat. 26 (codified in scattered sections of 49 U.S.C. Pt. A, Ch. 301).

Westlaw through P.L. 114–181) (preempting state laws that impose inconsistent safety regulations). Because this second subset of requests seeks relevant information but could not be more narrowly tailored, we conclude that Federal has not met its burden to demonstrate its entitlement to mandamus relief on the second subset of requests. We hold the trial court did not abuse its discretion in compelling Federal to respond to requests for admission 4, 6, 8, 10, and 24; interrogatories 11 and 13; and requests for production 8, 9, 20(a), and 20(b).

### 3. Request for Production 2(a).

In this request, Gonzalez sought Federal's communications with eleven specifically-named tire distributors. One of the distributors is located in Mississippi and the remainder in various cities in Texas. We agree with Gonzalez that Federal's communications, if any, with the Texas distributors listed in request 2(a) are relevant to the personal jurisdiction analysis because they could make it more or less likely that Federal deliberately did business with Texas residents. *See Moki Mac*, 221 S.W.3d at 577 (stating that evidence of a sale to a Texas resident cannot support jurisdiction without additional evidence of the seller's intent to serve the forum market). We also agree that Federal's contacts with the Mississippi distributor, Dunlap & Kyle, are relevant. Federal's counsel admitted during the hearing on the motion to compel that "[w]e've already admitted and provided information that says we sell tires to Dunlap & Kyle in Mississippi and at their request have and continue to ship tires into the state of Texas." Federal's communications with Dunlap & Kyle could show whether Federal intended to serve the Texas market by selling its tires to Dunlap & Kyle. *See id.* We agree with Gonzalez that Federal has not met its burden to demonstrate mandamus relief as to this discovery

14

request.[9] *See In re CSX Corp.*, 124 S.W.3d at 151. The trial court therefore did not abuse its discretion in compelling Federal to respond to Request for Production 2(a).

## D. Summary

In summary, we hold that Federal has demonstrated its entitlement to mandamus relief on interrogatories 3(a), 16, 18(a), (b), 19(a), 19(b), 20(a), 20(b), and 21(a), and requests for production 2(c), 5(b), 6, 7(a)-(c), 7(d)(ii), 7(e)(ii), 7(f)-(i), 11, 13(b), and 13(d). Federal has not shown its entitlement to mandamus relief on requests for admission 4, 6, 8, 10, and 24; interrogatories 11, 13, and 21(b); and requests for production 2(a), 2(b), 8, 9, 20(a), and 20(b). We sustain Federal's first issue in part and overrule it in part.

## IV. MERITS DISCOVERY

Federal argues in its second issue that the trial court abused its discretion by ordering it to respond to discovery requests which sought information relevant only to the merits of the underlying case. This third group of requests encompasses requests for disclosure A–L, requests for admission 15, 16, 20–23, and 39; interrogatories 9, 12, and 14; and requests for production 1(b), 3(iii), 3(iv), 4, 10, and 14–19.[10]

---

[9] Federal's brief on appeal states that it objected on relevancy grounds to Request for Production 2(b). Request 2(b) seeks Federal's communications "with sellers, dealers, and distributors, or prospective sellers, prospective dealers, and prospective distributors, in the state of Texas" during the relevant time period. However, Federal did not specifically object to 2(b) on relevancy grounds in the trial court. Objections to written discovery must be in writing and state the specific legal and factual basis for the request. *See* TEX. R. CIV. P. 193.2(a). Failure to do so may result in waiver unless the court excuses the waiver for good cause shown. *See id.* R. 193.2(e); *see also In re Summersett*, 438 S.W.3d 74, 80 n. 4 (Tex. App.—Corpus Christi 2013 [mand. denied], orig. proceeding).

The parties disagree regarding whether a general objection Federal lodged at the beginning of its discovery responses preserved error. Assuming without deciding that Federal properly preserved its relevancy objection, we overrule it. The information sought by request for production 2(b) is directly relevant to whether Federal had purposeful contacts with Texas. *See In re Doe*, 444 S.W.3d 603, 608 (Tex. 2014) (orig. proceeding).

[10] Federal included Request for Production 21 within this third grouping. However, Federal did not object to Request for Production 21 in the trial court on the ground that it sought information irrelevant to the special appearance. We conclude that Federal has waived its relevancy objection to this discovery request. *See* TEX. R. CIV. P. 193.2(e); *In re Summersett*, 438 S.W.3d at 80 n. 4.

15

## A. Requests for Admission, Requests for Production, and Interrogatories

We agree with Federal that discovery relevant to the merits of the case is not permitted because it is not relevant to the special appearance. *See In re Doe*, 444 S.W.3d at 608; *see also Nationwide Distrib. Servs., Inc. v. Jones*, No. 01-15-00232-CV, ___ S.W.3d ___, ___, 2016 WL 3221071, at *6 (Tex. App.—Houston [1st Dist.] June 9, 2016, no pet.) ("Merits-based discovery should not be compelled from a specially appearing defendant before ruling on the jurisdictional challenge."); *In re Stern*, 321 S.W.3d 828, 839–40 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (op. on reh'g) (reaching the same conclusion). Gonzalez nevertheless argues that much of the information he requested in this third group of discovery requests is actually relevant to the special appearance. He asserts that he has a right to discovery on whether Federal maintains warranty and adjustment data for the subject tire, and whether Federal has a procedure for processing warranty claims from Texas, because that information is relevant to determining whether Federal maintains regular channels for interacting with customers in Texas. *See Spir Star*, 310 S.W.3d at 873 (holding that "establishing channels for providing regular advice to customers in the forum State" can serve as the necessary evidence to demonstrate that a nonresident seller intended to serve the Texas market).

We disagree with Gonzalez. As we explained in greater detail above, a defendant's contacts are relevant to the personal-jurisdiction analysis if they are "'purposefully directed' into the forum state." *Searcy*, ___ S.W.3d at ___, 2016 WL 3418248, at *5. That Federal has channels for processing warranty claims and returns from persons in Texas is probative that Federal did business with persons who happened to be Texas residents at the time of the warranty claims. Without more, information on

that matter is not probative that Federal purposefully targeted Texas itself. *See Walden*, 134 S. Ct. at 1122 (observing that the personal jurisdiction analysis looks to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *see also Searcy*, ___ S.W.3d at ___, 2016 WL 3418248, at *5. Authorizing discovery of information regarding other defective tires unrelated to the underlying lawsuit would condone the sort of overbroad "impermissible fishing expedition" into unrelated matters prohibited by the Supreme Court of Texas. *See, e.g.*, *In re Am. Optical Corp.*, 988 S.W.2d at 713 (holding that an order requiring the defendant to produce all documents it created in a fifty-year period relating to asbestos was overbroad as a matter of law); *Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam) (refusing, in a false arrest case, to authorize discovery regarding similar claims against store locations owned by the defendant in twenty states). We reject Gonzalez's argument and conclude the trial court abused its discretion in compelling Federal to respond to the above discovery requests. We conclude that Federal has demonstrated its entitlement to mandamus relief regarding requests for admission 15, 16, 20–23, and 39; interrogatories 9, 12, and 14; and requests for production 1(b), 3(iii), 3(iv), 4, 10, and 14–19.

### B. Requests for Disclosure

Gonzalez served twelve requests for disclosure on Federal, which sought disclosure of all of the matters that Rule 194.2 makes subject to disclosure. *See* TEX. R. CIV. P. 194.1, 194.2. Federal objected to the requests for disclosure on the basis that they sought information relevant to the merits and irrelevant to the special appearance. However, Rule 194.5 provides that "[n]o objection or assertion of work product is

permitted to a request under this rule." *Id.* R. 194.5. The Rules of Civil Procedure have the same force and effect as statutes and should be construed in a similar manner. *In re Dana Corp.*, 138 S.W.3d 298, 302 (Tex. 2004) (orig. proceeding). The plain language of the rule provides that no objections to requests for disclosure are permitted, and Federal has not explained what other considerations should persuade us not to follow the plain meaning of the language of the rule. *See Simulis, L.L.C. v. G.E. Capital Corp.*, 276 S.W.3d 109, 113 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (observing that courts should attempt to enforce the plain language of a rule absent countervailing considerations). Even though we acknowledge that requests for disclosure B-L would require responses that would arguably be overbroad at this stage of the case, the rules provide that the proper remedy is to seek a protective order pursuant to Texas Rule of Civil Procedure 192.6. *See* TEX. R. CIV. P. 194 cmt. 1; *In re Univar USA, Inc.*, 311 S.W.3d 175, 180 (Tex. App.—Beaumont 2010, orig. proceeding) (observing that while objections to requests for disclosure are not permitted, "a party is allowed to file a motion for a protective order pursuant to Rule 192.6"); *see also In re DCP Midstream, L.P.*, No. 13-14-00502-CV, 2014 WL 5019947, at *8 (Tex. App.—Corpus Christi Oct. 7, 2014, orig. proceeding) (mem. op.) (making the same observation). Because no objections are permitted to requests for disclosure, and Federal did not ask for a protective order or give the trial judge an opportunity to address such a request, we hold that Federal has not carried its burden of demonstrating its entitlement to mandamus relief. *See* TEX. R. CIV. P. 194.5; *see also In re CSX Corp.*, 124 S.W.3d at 151. The trial court did not abuse its discretion regarding the requests for disclosure because Federal did not seek the appropriate relief from the burden of responding to some of the requests.

### C. Summary

In summary, we hold that Federal has demonstrated its entitlement to mandamus relief regarding requests for admission 15, 16, 20–23, and 39; interrogatories 9, 12, and 14; and requests for production 1(b), 3(iii), 3(iv), 4, 10, and 14–19. Federal has not demonstrated its entitlement to mandamus relief regarding request for production 21 and any of the requests for disclosure. We overrule Federal's second issue in part and sustain it in part.

## V. ADEQUATE REMEDY BY APPEAL

We have concluded that Federal meets the first element of entitlement to mandamus relief because the trial court's order compels it to respond to some discovery requests which are overbroad. *See In re Graco Children's Products, Inc.*, 210 S.W.3d at 600 (holding that an order that compels discovery outside the bounds permitted by the rules is an abuse of discretion). We now turn to the second prong of the test, which looks to whether Federal has an adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36. An order that compels discovery outside the bounds permitted by rules is an abuse of discretion for which mandamus is the proper remedy. *In re Graco Children's Products, Inc.*, 210 S.W.3d at 600; *see In re Stern*, 321 S.W.3d at 843 (granting mandamus relief in a similar context because certain requests for production were "not narrowly tailored to avoid inclusion of tenuous information irrelevant to the establishment of jurisdiction, and they are thus overbroad"). We hold that Federal has met the second prong of the test for mandamus relief except with regard to the requests for disclosure and requests for admission 4, 6, 8, 10, and 24; interrogatories 11, 13, and 21(b); and requests for production 2(a), 2(b), 8, 9, 20(a), 20(b), and 21.

19

## VI. CONCLUSION

We conditionally grant mandamus relief in part and direct the trial court to withdraw its order regarding: requests for admission 15, 16, 20–23, and 39; interrogatories 3(a), 9, 12, 14, 16, 18(a), 18(b), 19(a), 19(b), 20(a), 20(b), and 21(a), and requests for production 1(b), 2(c), 3(iii), 3(iv), 4, 5(b), 6, 7(a)-(c), (d)(ii), 7(e)(ii), 7(f)-(i), 10, 11, 13(b), 13(d), and 14–19. We deny mandamus relief as to the other discovery requests. The writ will issue only if the trial court refuses to comply. Further, we lift the stay imposed by our order of April 15, 2016.

NORA L. LONGORIA
Justice

Delivered and filed the
1st day of November, 2016.