

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-24-00529-CV

**LITTLE & GORGEOUS, INC.** d/b/a Wild & Gorgeous Transfers and Amanda Fournier,
Appellants

v.

**WILD TRIBE SCREEN PRINTS, LLC**,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2023-CI-03687
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice
Concurring Opinion by: Lori Massey Brissette, Justice

Sitting:        Lori I. Valenzuela, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: March 12, 2025

REVERSED AND RENDERED

Appellants Little & Gorgeous, INC. d/b/a Wild & Gorgeous Transfers ("Little & Gorgeous") and Amanda Fournier appeal the trial court's denial of their special appearance. Appellee Wild Tribe Screen Prints, LLC ("Wild Tribe") sued appellants in Texas for defamation and business disparagement based on Facebook posts authored by Fournier, who owns Little & Gorgeous. We reverse and render judgment dismissing Wild Tribe's lawsuit against appellants for lack of personal jurisdiction.

## BACKGROUND

Little & Gorgeous is a Canadian business that provides screen-printing products to consumers in Canada and across the United States—including Texas. Little & Gorgeous is owned and operated by Fournier, a Canadian resident. Wild Tribe is a Texas company and a market competitor of Little & Gorgeous.

Fournier operates a group Facebook page where she shares new designs and interacts with consumers. There are over 40,000 members of the group located worldwide, including Texas. Sometime after creating the group, Fournier began posting on the group page inferring that Wild Tribe was infringing on the Little & Gorgeous trademark, Wild Tribe's owner Wendy Howton was knowingly performing acts to cause business confusion with Little & Gorgeous, and that Howton was instigating personal attacks at Fournier. Included in Fournier's posts was a screenshot of private messages between Fournier and a former family friend of Howton, in which it was alleged that Howton's family was involved with the mafia and had "done all of this" before.

On February 22, 2023, Wild Tribe sued Little & Gorgeous and Fournier in Bexar County, Texas, for defamation and business disparagement and requested injunctive relief. Wild Tribe's petition listed Canadian addresses for appellants and, citing Texas Civil Practices and Remedies Code section 15.002, asserted jurisdiction and venue were proper in Bexar County because it is where "the Subject business and all of the events or omissions giving rise to this claim occurred." *See* TEX. CIV. PRAC. & REM. CODE § 15.002 (establishing the general venue rule). As for the factual basis for jurisdiction, Wild Tribe alleged that appellants improperly claimed Wild Tribe had infringed on Little & Gorgeous's trademark and business model and that appellants had conducted a bullying, harassing, and disparaging "campaign" against Wild Tribe.

In response to Wild Tribe's lawsuit, appellants filed a special appearance arguing: that the factual allegations in Wild Tribe's petition did not bring appellants within the Texas long-arm

statute; appellants had no minimum purposeful contacts with Texas that gave rise to the litigation; and that asserting jurisdiction over appellants would offend traditional notions of fair play and substantial justice. Attached to appellants' special appearance was a declaration from Fournier stating that she was not domiciled in Texas, did not specifically tailor her business advertising to Texas, had no systematic or continuous contacts with Texas, did not direct any of the Facebook posts to Texas or Texas residence, that members of the Facebook group reside all over the world, and that the distance required to travel to litigate in Bexar County would cause an undue financial burden.

Wild Tribe responded to appellants' jurisdictional challenge by arguing that jurisdiction was proper in Texas because the allegedly defamatory Facebook posts harmed Wild Tribe's "revenue and reputation, which was targeted and occurred in Texas" and because Fournier had "communicated with customers and people in Texas including a [former family friend] who attempted to help [Fournier's] campaign of defamation and disparagement [by] sending Fournier private messages that stated their family was connected to the mafia and that [Wild Tribe] has 'done all of this' before." In sum, Wild Tribe concluded, "[t]here is no doubt that the disparaging remarks, harassment and bullying occurred in Texas" and appellants "have engaged in business competition with [Wild Tribe] in Texas and committed the torts of conspiracy and defamation in Texas by communicating with [Wild Tribe's] suppliers, customers, networking contacts, and by engaging in commerce in Texas to directly compete with [Wild Tribe]." Attached to Wild Tribe's response was an affidavit authored by Howton in which she reasserted the allegations in Wild Tribe's response and provided a basis for screenshots attached to the affidavit purporting to show Little & Gorgeous's shipments of products to Texas consumers. Wild Tribe additionally attached a complaint filed in federal court by appellants alleging Wild Tribe had infringed on Little &

Gorgeous's trademark. Appellants objected to the use of Howton's affidavit as evidence supporting Wild Tribe's response to their special appearance.

Prior to hearing the merits of the jurisdictional dispute, the trial court granted a continuance and allowed discovery limited to jurisdictional facts. Following the discovery period and a hearing on the jurisdictional merits, the trial court overruled appellants' objections to Howton's supporting affidavit and denied their special appearance. Appellants requested findings of fact and conclusions of law, which the trial court did not file. Appellants then initiated this interlocutory appeal.

### PERSONAL JURISDICTION

On appeal, appellants assert the trial court erred by finding Texas possesses personal jurisdiction over them because appellants lack sufficient minimum contacts with Texas. Wild Tribe concludes that because of the sales volume generated by Texas residents to Little & Gorgeous, and because Fournier knew Texas residents were in the Facebook group, Texas has personal jurisdiction over appellants—whether it be specific or general jurisdiction.

### *Standard of Review*

Wild Tribe, as the plaintiff, had the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). As the nonresident defendants, Little & Gorgeous and Fournier then assumed the burden of negating all bases of jurisdiction in those allegations. *Id.* "Because the question of a court's exercise of personal jurisdiction over a nonresident defendant is one of law, we review a trial court's determination of a special appearance de novo." *Id.*

When, as here, "a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.

2002). "When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *Id.*

*Applicable Law*

A personal jurisdiction analysis requires an examination of both state and federal law. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). The broad language of the Texas long-arm statute permits the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River*, 221 S.W.3d at 575 (internal quotation marks omitted); *see also* TEX. CIV. PRAC. & REM. CODE § 17.042. However, allegations that suffice under the Texas long-arm statute—for example, an assertion that the defendant committed a tort in Texas—do not necessarily satisfy constitutional due process requirements. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005). To satisfy those requirements, the plaintiff must also allege facts showing: (1) the defendant has established "minimum contacts" with Texas; and (2) Texas's assertion of jurisdiction would not "offend traditional notions of fair play and substantial justice." *Searcy*, 496 S.W.3d at 66.

"A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (internal quotation marks omitted). The defendant's contacts with Texas must support the conclusion that it "could reasonably anticipate being subject to the jurisdiction of the Texas court system." *Haddad v ISI Automation Int'l, Inc.*, No. 04-09-00562-CV, 2010 WL 1708275, at *3 (Tex. App.—San Antonio Apr. 28, 2010, no pet.) (mem. op.). We consider only the defendant's contacts with Texas itself, not other parties' contacts with Texas or the defendant's contacts with persons who live in Texas. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 561 (Tex.

2018). We must also assess each defendant's contacts with Texas individually. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 172 (Tex. 2007). "The purpose of the minimum-contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

Consistent with our standard of review, we first address appellants' contention that Wild Tribe failed to plead sufficient jurisdictional facts to bring them within the reach of the Texas long-arm statute.

*Analysis*

*A. Wild Tribe's Pleadings*

Appellants argue Wild Tribe failed to satisfy its initial burden under the special appearance burden-shifting framework because Wild Tribe's petition fails to assert any facts that would give rise to acts occurring in Texas. Wild Tribe responds that its petition does assert the acts occurred in Texas as the petition states venue is proper in Bexar County and because Howton's affidavit establishes the underlying jurisdictional facts. As noted by the Texas Supreme Court, while the petition is "essential to frame the jurisdictional dispute, [it] is not dispositive." *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 n.4 (Tex. 2010). This is so because "Rule 120a requires a special appearance to be made by sworn motion, . . . and also requires the trial court to 'determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." *Id.* (quoting TEX. R. CIV. P. 120a(1), (3)). Thus, when reviewing Wild Tribe's initial burden, we not only review Wild Tribe's petition but also, as relevant here, Wild Tribe's response to appellants' special appearance, Howton's affidavit, and the

results of the discovery process. *See id.*; *Cirrus Design Corp. v. Berra*, 633 S.W.3d 640, 647 (Tex. App.—San Antonio 2021, no pet.).

Before addressing the jurisdictional sufficiency of Wild Tribe's pleadings and supporting evidence, we must first address the evidentiary challenge to Howton's supporting affidavit raised in the trial court and re-asserted on appeal.

On appeal, appellants argue that Howton's affidavit is conclusory. Affidavits in support of a special appearance "shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence." TEX. R. CIV. P. 120a(3). "Special appearance affidavits must also be direct, unmistakable, and unequivocal as to the facts sworn to." *Hoagland v. Butcher*, 396 S.W.3d 182, 193 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (internal quotation marks omitted). In her affidavit, Howton attests to how the claims in her petition allegedly connect appellants to Texas and the purported basis for her claims. Howton additionally attached screenshots to her affidavit that she represents showed appellants "maintain online and social media groups specifically for the Texas market and distributes online and social media materials directed to Texas markets and is directly engaged in manufacturing and selling [appellants'] products in Texas." After reviewing Howton's affidavit and the parties' arguments, we conclude that the trial court did not err in overruling appellants' conclusory objection to Howton's affidavit. *See Phillips Dev. & Realty, LLC v. LJA Eng'g, Inc.*, 499 S.W.3d 78, 89–90 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (concluding conclusory accusation towards supporting special appearance affidavit was without merit); *cf. Hoagland*, 396 S.W.3d at 193 (holding affidavits filed in support of special appearance conclusory and unsupported in fact).

Now that we have determined that it was proper for the trial court to consider Howton's affidavit when determining whether Wild Tribe met its initial burden, we next consider whether Wild Tribe did, in fact, meet its initial burden. Considering Wild Tribe's petition, response to

appellants' special appearance, and supporting evidence, we conclude that Wild Tribe's allegations are sufficient to allege that appellants committed a tort in Texas. Accordingly, Wild Tribe satisfied its initial burden of pleading sufficient jurisdictional facts to bring appellants within the purview of the Texas long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(2); *Kelly*, 301 S.W.3d at 658–59. Accordingly, to succeed on their special appearance, appellants were required to negate all jurisdictional bases alleged in Wild Tribe's pleadings—i.e., that they do not have sufficient minimum contacts with Texas. *See Kelly*, 301 S.W.3d at 658–59.

Federal due process jurisprudence divides the minimum contacts analysis into "two strains of personal jurisdiction: specific and general." *Searcy*, 496 S.W.3d at 67. In the trial court, Wild Tribe asserted that Texas can exercise both specific and general jurisdiction over appellants. Because the trial court did not file findings of fact and conclusions of law or otherwise provide a basis for its order, we will examine each analysis separately.

*B. Specific Jurisdiction*

"The first type of personal jurisdiction is specific jurisdiction, which is based on whether the defendant's activities in the forum state themselves 'give rise to the liabilities sued on.'" *Id.* (citation omitted). "Broadly stated, specific jurisdiction exists when the plaintiff's claims 'arise out of' or are 'related to' the defendant's contact with the forum." *Id.* (citation omitted). Thus, specific jurisdiction has two components: the purposeful availment inquiry and the nexus between the nonresident defendant, the litigation, and the forum. *See Moki Mac River*, 221 S.W.3d at 576.

"A nonresident defendant that has 'purposefully availed' itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction." *BMC Software*, 83 S.W.3d at 795. "Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established 'minimum contacts' with the forum state." *Id.* "However, a defendant

should not be subject to a foreign court's jurisdiction based upon 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* (citation omitted).

"The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac River*, 221 S.W.3d at 579. "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Id.* at 585. Thus, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State," and the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (citation omitted); *see also Moore v. Cecil*, 109 F.4th 1352, 1363 (11th Cir. 2024) (collecting cases in which social media is analyzed for purposes of personal jurisdiction and noting sister circuits have "uniformly held that in determining whether the allegedly defamatory comments or information was directly aimed at the forum, the court must look to the defendant's focus, purpose, and/or intent in posting the information.").

### I.    *Little & Gorgeous*

Little & Gorgeous is a Canadian corporation; its principal place of business is in Canada; it ships products to locations throughout Canada and the United States; it does not have any offices or employees in Texas; and it has never operated a storefront in Texas. According to Wild Tribe, Little & Gorgeous is subject to jurisdiction in Texas because Fournier's Facebook group posts relate to a consumer market that both Wild Tribe and Little & Gorgeous participate in and because

some of the group's members reside in Texas. In its special appearance, Little & Gorgeous alleged and presented evidence that it does not maintain online social media groups specifically for Texas and that approximately 15% of its sales are derived from the Texas market. *See e.g., Spir Star AG v. Kimich*, 310 S.W.3d 868, 873–74 (Tex. 2010) (noting the awareness and "additional conduct" required for Texas to exercise personal jurisdiction over seller whose products enter the Texas market); *Moki Mac River*, 221 S.W.3d at 579 ("There is evidence that, over the preceding five years, between 105 and 128 of [appellant's] customers (between 7–11%) were from Texas. We have emphasized that mere profit originating from the forum, if unrelated to a contact with the forum, is not purposeful availment.").

Assuming we entertained Wild Tribe's contention that Little & Gorgeous's direct sales to the Texas market could be a basis for a connection with Texas, we find this argument unattenuated to the gravamen of the underlying litigation. "For specific-jurisdiction purposes, purposeful availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts." *Moki Mac River*, 221 S.W.3d at 579. "A claim arises from or relates to a defendant's forum contacts if there is a substantial connection between those contacts and the operative facts of the litigation." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 52 (Tex. 2016) (internal quotation marks omitted); *see also Walden*, 571 U.S. at 286 (noting the same personal jurisdiction "principles apply when intentional torts are involved.").

The volume of Little & Gorgeous's sales to the Texas market may be relevant where, for example, a Little & Gorgeous product is intricately important to the underlying ligation. *Spir Star*, 310 S.W.3d at 873–74. However, the operative facts underlying the case at bar revolve around the allegedly defamatory and disparaging Facebook posts authored by Fournier on the Little & Gorgeous group page. *See Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 14 (Tex. 2021) ("Despite a nonresident defendant's flood of purposeful contacts with the forum state, the

exercise of specific jurisdiction is prohibited if 'the *suit*' does not 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'") (citations omitted) (emphasis and alteration in original). Even if we assume Fournier was acting as an agent for Little & Gorgeous when she authored the Facebook posts, the allegedly defamatory statements were not directed at Texas, there is no evidence that the Facebook group is for Texans only, and Wild Tribe has not made a showing that the Facebook posts themselves were in relation to sales generated to the Texas market. The only evidence proffered by Wild Tribe that Texas may exercise jurisdiction over Little & Gorgeous is that Wild Tribe happens to conduct business in Texas and was allegedly damaged in Texas— which are insufficient bases, without more, to support specific jurisdiction over Little & Gorgeous. *See Hanor v. Hanor*, No. 04-20-00142-CV, 2020 WL 7364659, at *5 (Tex. App.—San Antonio Dec. 16, 2020, no pet.) (mem. op.) ("[B]oth [appellee's] special appearance and [appellant's] opposing evidence show that the only connection between [appellee's] alleged torts and Texas is that [appellant], the alleged target of those torts, 'happens to live in' Texas."); *cf. Johnson v. Griffin*, 85 F.4th 429, 435 (6th Cir. 2023) (holding Tennessee had personal jurisdiction over a California resident whose tweets directed Tennessee company to fire Tennessee resident). Thus, Little & Gorgeous sales to Texas and the alleged damages suffered by Wild Tribe in Texas are not "tethered to [Texas] in any meaningful way." *Walden*, 571 U.S. at 290; *Weeks Marine Co., LLC v. Landa*, 629 S.W.3d 742, 749 (Tex. App.—San Antonio 2021, no pet.). Accordingly, the trial court erred to the extent it found it could exercise specific jurisdiction over Little & Gorgeous.

## II. Fournier

Fournier is a Canadian resident who has never lived in or traveled to Texas. In her declaration attached to appellants' special appearance, Fournier conceded she is the administrator of the Little & Gorgeous group Facebook page in which the posts at the center of the underlying litigation were made; however, she declares the posts were "generated by me through electronic

devices I own in Canada" and that she "did not direct post, message, or communication [sic] to Texas." Nevertheless, Wild Tribe contends Fournier has purposefully availed herself in Texas because the allegedly defamatory Facebook posts caused Wild Tribe to suffer damages in Texas.

"There is a subtle yet crucial difference between directing a tort at an individual who happens to live in a particular state and directing a tort at that state." *TV Azteca*, 490 S.W.3d at 43. Even taking Wild Tribe's assertion as true that it suffered damages in Texas, just like our analysis above, the mere fact that alleged conduct is directed "at a plaintiff who lives in and allegedly suffered injuries in Texas, without more, does not establish specific jurisdiction." *Id.*; *Hanor*, 2020 WL 7364659, at *5 ("In determining whether a nonresident tortfeasor's acts support the forum state's exercise of jurisdiction over him, '[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.") (citation omitted); *see also Calder v. Jones,* 465 U.S. 783, 789 (1984) (establishing specific jurisdiction can be established where an author aims conduct at a state knowing the effect will be felt there); *Nunes v. NBCUniversal Media*, LLC, 582 F. Supp. 3d 387, 400 (E.D. Tex. 2022) ("Posting an allegedly defamatory statement on Twitter does not satisfy *Calder's* 'effects test' merely because some members of the Tweet's audience fortuitously reside in the forum state.").

Here, Wild Tribe's arguments center around Fournier's Facebook posts originating in Canada, and there is no evidence that Texas's interests were the focus of Fournier's conduct. *See Hanor*, 2020 WL 7364659, at *5; *see also Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015) (holding *Calder's* "effects test" not satisfied where social media posts only alleged injury to the plaintiff, the only connection to the forum). Rather, the evidence presented by the parties shows that the only connection between Fournier's alleged torts and Texas is that Wild

Tribe allegedly incurred damages in Texas. Accordingly, the trial court erred to the extent it concluded Texas could exercise specific jurisdiction over Fournier.

### III.    Other Considerations

Finally, while the record contains a copy of the federal complaint filed by Little & Gorgeous proffering trademarking infringement allegations and other claims against Wild Tribe, Wild Tribe has not provided authority supporting Wild Tribe's proposition that this alone may confer Texas specific personal jurisdiction over Little & Gorgeous. *See* TEX. R. APP. P. 38.2(a), 38.1(i) (requiring appellee to provide appropriate authority for its argument). Wild Tribe additionally asserts that specific jurisdiction is proper because a former defendant in the lawsuit is a Texas resident. This, however, does not affect our analysis as its appellants' contacts with Texas, not the former defendant's, that control. *Walden*, 571 U.S. at 284–85; *Proppant Sols., LLC v. Delgado*, 471 S.W.3d 529, 542 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also Old Republic*, 549 S.W.3d at 560 ("The mere existence or allegation of a conspiracy directed at Texas is not sufficient to confer jurisdiction."). Because we conclude that neither Little & Gorgeous nor Fournier maintained sufficient minimal contacts in Texas relevant to the underlying litigation, it is unnecessary for us to address whether jurisdiction would offend traditional notions of fair play and substantial justice. *Searcy*, 496 S.W.3d at 66. Accordingly, we conclude the trial court erred to the extent it found Texas could exercise specific jurisdiction over Little & Gorgeous and Fournier. We sustain appellants' first issue.

### C.  General Jurisdiction

"[T]he general jurisdiction analysis entails a high bar." *Searcy*, 496 S.W.3d at 72. To support the exercise of general jurisdiction, the plaintiff must show that the out-of-state defendant's contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139

(2014) (internal quotation marks omitted). A corporation's principal place of business and location of incorporation are touchstones of the application of general jurisdiction. *Id.* at 137. While a corporation may be at home in other locations "in an exceptional case," the general jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.19, 20.

"[T]he ties between the litigation itself and the forum state are irrelevant to the question of whether general jurisdiction exists." *Searcy*, 496 S.W.3d at 72. "[G]eneral jurisdiction relies on the defendant itself being tied up—almost entangled in a web—with the forum state." *Id.*; *see also Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 411 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (detailing differing categories of internet use in a personal jurisdiction analysis). Even if a defendant maintains continuous and systematic contacts with the forum state, those contacts "are insufficient to confer general jurisdiction if they fail to rise to the level of rendering [the] defendant essentially at home in the forum state." *Old Republic*, 549 S.W.3d at 565 (emphasis in original, internal quotation marks omitted); *see also Baldaramos v. Metamorphosis Consulting, LLC*, No. 04-19-00356-CV, 2019 WL 6719033, at *4 (Tex. App.—San Antonio Dec. 11, 2019, no pet.) (mem. op.). The Texas Supreme Court has explained that because a general jurisdiction analysis is "dispute-blind," a reviewing court can properly frame this inquiry by "construct[ing] a hypothetical claim without any forum connection"—i.e., by considering whether the defendant's Texas contacts are so pervasive that it could properly be haled into a Texas court based on an out-of-state plaintiff's complaints about actions that occurred outside of Texas. *See PHC-Minden*, 235 S.W.3d at 169.

Here, as discussed above, Little & Gorgeous is a Canadian corporation; its principal place of business is in Canada; it does not have any offices or employees in Texas; and it has never

operated a storefront in Texas. Likewise, Fournier is a Canadian resident who has never lived in or traveled to Texas. *Searcy*, 496 S.W.3d at 72 ("Continuous and systematic contacts that fail to rise to this relatively high level are insufficient to confer general jurisdiction over a nonresident defendant."). There is no evidence that appellants made substantial efforts to benefit from the Texas market so as to render them at home in this State. Accordingly, there is no basis to support an assertion that appellants are "at home" in Texas. We sustain appellants' second issue.

## CONCLUSION

Based on the foregoing, we reverse the trial court's order denying appellants' special appearance.[1] We render judgment dismissing Wild Tribe's lawsuit against appellants for lack of personal jurisdiction.

Lori I. Valenzuela, Justice

---

[1] The operative pleading ruled on by the trial court and at issue in this interlocutory appeal is the appellants' second amended special appearance.